| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| R.B. DWYER CO, INC. | : | CASE NO. 5:23-bk-01420-MJC |
| IDEAL SLEEVES INTERNATIONAL, | : | CASE NO. 5:23-bk-01418-MJC |
| LLC, | : | CASE NO. 5:23-bk-01421-MJC |
| COLOR CRAFT FLEXIBLE PRINTING, | : | |
| LLC | : | |
| DEBTORS-IN-POSSESSION | : | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE SALE OF
ASSETS TO THE STALKING HORSE PURCHASER, SUBJECT TO HIGHER AND
BETTER OFFERS, (II) SCHEDULING A HEARING TO CONSIDER APPROVAL OF
THE SALE AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (III) APPROVING
CERTAIN BIDDING PROCEDURES, ASSUMPTION AND ASSIGNMENT
PROCEDURES, AND THE FORM AND MANNER OF NOTICE THEREOF, AND (IV)
GRANTING RELATED RELIEF**

The motion of the above-captioned debtors and debtors-in-possession (collectively, the

"Debtors"), by and through its undersigned attorneys (the "Motion"), pursuant to sections 105,

363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the

"Bankruptcy Code"), for the entry of:

(A)     an order, substantially in the form submitted herewith (the "Bidding Procedures
        Order") (i) scheduling a hearing (the "Sale Hearing") to consider approval of
        the sale of substantially all of the Debtors' assets (the "Sale") to Formosa Flexible
        Packaging America, Inc. (the "Stalking Horse Purchaser"), subject to higher and
        better bids, free and clear of all liens, claims, encumbrances, and other interests
        except as otherwise set forth herein (collectively, the "Encumbrances"), and
        authorizing the assumption and assignment of  certain executory contracts and
        unexpired leases (each, an "Assumed Executory Contract," and collectively, the
        "Assumed Executory Contracts"), if any, in connection therewith, (ii) authorizing
        and approving certain proposed bidding procedures for the Sale, as more fully set
        forth below, certain proposed assumption and assignment procedures (collectively,
        the "Assumption and Assignment Procedures"), and the form and manner of notice
        thereof; (iii) establishing procedures in connection with the selection of the
        prevailing bidder (the "Successful Bidder"); and (iv) granting related relief; and

(B)     an order ("Sale Order") (i) authorizing and approving the Debtors' entry into the Stalking Horse Contract (as defined below), subject to higher and better bids; (ii) authorizing and approving the sale of the Purchased Assets (as defined in the Stalking Horse Contract) consistent with the terms and conditions of the Stalking Horse Contract to the Stalking Horse Purchaser, free and clear of all Encumbrances, except as otherwise set forth therein; (iii) authorizing and approving the assumption and assignment of the Assumed Executory Contacts in connection therewith; and (iv) granting related relief.

In support of this Motion, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The Debtors have determined that the best interests of creditors and the estates will be served by the orderly sale of the Debtors' assets under section 363(b) and (f) of the Bankruptcy Code since the dismissal or conversion of these cases will result in the cessation of their business operations.  In that regard, the Debtors have solicited purchase offers with respect to their assets and intend to market the assets to prospective purchasers in a process designed to maximize the value of such assets.  Those efforts have resulted in an offer by the Stalking Horse Purchaser to acquire substantially all of the assets for a purchase price valued at approximately $5,000,000.00 in accordance with that certain agreement of sale dated as of August 2, 2023 (as amended or otherwise modified, the "Stalking Horse Contract"), a copy of which is annexed hereto and made a part hereof as Exhibit "A", which contemplates a free and clear sale pursuant to section 363(b) and (f) of the Bankruptcy Code.

2.      Capitalized terms used in this Motion and not otherwise defined herein shall have the meanings assigned thereto in the Stalking Horse Contract.  In the event of any conflict between this Motion and the Stalking Horse Contract, the terms of the Stalking Horse Contract shall control.

3.      By this Motion, the Debtors seek to implement a sale process which recognizes the estates' need for the prompt disposition of the assets, but which nevertheless provides an

opportunity to maximize the value thereof through competitive bidding in an orderly auction process.

4.      As a result of the risks associated with the estates' continued ownership and operation of the assets, which include a chronic cash shortfall from operations, it is necessary for the Debtors to proceed as quickly as possible to establish a process by which the assets are sold to the highest and best bidder.  To this end, the Motion seeks to establish an expeditious bidding process that provides the Debtors with sufficient time to market the assets to third-parties, while also balancing the need to move quickly with the ability to maximize value.  In particular, the proposed procedures contemplate a closing on any sale as soon as is reasonably practicable following a solicitation and marketing process.

5.      For reasons described more fully below, the Debtors believe that pursuing a sale on an expedited timeline is critical to their efforts to maximize the value of the assets.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.   The Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory and legal predicates for the relief sought herein are sections 105, 363, 365, 503 and 507 of the Bankruptcy Code, Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

# BACKGROUND

8. On June 26, 2023 (the "Petition Date"), the Debtors filed respective voluntary petitions for reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

9. The Debtors' Chapter 11 cases are being jointly administered.

10. Together, the Debtors comprise an integrated commercial packaging enterprise.

11. The Debtors' cash for operations is dependent solely on their accounts receivable collections. As a result, the Debtors are experiencing severe liquidity constraints.

12. Despite this challenge, the Debtors have persevered in maximizing the going concern value of their assets through continued post-petition operations.

13. While the Debtors filed a motion for authority to sell their assets on July 7, 2023 (the "Sale Motion") [Doc. No. 67] and sought an expedited hearing thereon, this Court denied the request for an expedited sale hearing pending approval of sale procedures and the filing of the Stalking Horse Contract [Doc. No. 74]. This Motion complies, to the best of the Debtors' abilities, with the Court's prior ruling.

14. Since before the Petition Date, the Debtors have been actively engaged in identifying potential purchasers of all or substantially all of their assets. The Debtors have retained Jack Farris and his company (the "Broker") to market and sell the assets, subject to the approval of this Court. On July 4, 2023. the Debtors obtained a letter of intent from the Stalking Horse Purchaser (the "LOI"), which was submitted with the Sale Motion.

15. The LOI specifically contemplated the Debtors' right to seek higher, better or otherwise competing offers for the assets. As a result, the assets have been actively marketed by the Broker.

A. **The Assets**.

19.     The Debtors' assets consist of accounts receivable, inventory, work in process, machinery, equipment, general intangibles and other personal property.

20.     As explained below, the Debtors believe that the assets have substantial market value and that such value can be maximized through a sale to the Stalking Horse Purchaser or a higher bidder pursuant to a competitive bidding process under section 363 of the Bankruptcy Code.

## B.     <u>The Debtors' Marketing Efforts</u>.

21.     Prior to the Petition Date, the Debtors engaged in discussions with a number of competitors to sell the assets.  In each instance, the prospective buyer advised the Debtors of the need to effectuate a free and clear sale under the applicable provisions of the Bankruptcy Code. In conjunction with their retention of the Broker, the Debtors tasked the Broker with marketing the assets to both strategic and financial buyers, which the Broker has actively done.  The Broker will testify concerning the nature and extent of his marketing efforts in support of the Sale.

22.     Recognizing that a stalking horse offer would be valuable in establishing a floor price in a competitive marketing process, the Debtors and the Stalking Horse Purchaser negotiated the terms of the Stalking Horse Contract.

23.     Pursuant to the Stalking Horse Contract, the Stalking Horse Purchaser has offered to acquire the Debtors' assets for cash in the amount of $5,000,000.00, subject to adjustment as provided therein, subject to higher and better offers. The Stalking Horse Contract is contingent upon Bankruptcy Court approval of the Sale free and clear of Encumbrances.

24.     The Stalking Horse Purchaser is an entity unaffiliated with the Debtors or their principals and has negotiated the Stalking Horse Contract in good faith and at arm's length.

25.     The Debtors submit that an auction (the "Auction") is likely to result in competitive bids which will increase the cash consideration for assets.

26. The Debtors' goal is to obtain maximum exposure of the assets to potential buyers as quickly as possible under the circumstances and will consider any transaction that will result in obtaining the highest and best value for such assets. To that end, the Debtors have developed the Bidding Procedures to provide potential purchasers with the opportunity to submit Qualifying Bids and to participate in the Auction.

27. The Debtors submit that the Stalking Horse Contract represents the best purchase offer received to date and will serve as a springboard for soliciting higher and better offers.

28. This Motion (with the Stalking Horse Contract attached) will be served upon, among others, (i) all parties who have previously expressed an interest in the Debtors' assets, (ii) all parties which have requested notice pursuant to Federal Rule of Bankruptcy Procedure 2002, (iii) all lienholders of record, (iv) the Office of the United States Trustee, (v) and (vi) non-debtor parties to executory contracts, if any, that may be assumed and assigned under the Stalking Horse Contract. The Debtors shall provide a copy of the Stalking Horse Contract to any other party upon e-mail or telephonic request made to their undersigned counsel.

29. Pursuant to the terms of this Motion, the assets will be sold to the Stalking Horse Purchaser or a Successful Bidder free and clear of Encumbrances, with the Encumbrances attaching to the cash proceeds of the asset sale.

30. A summary of the key terms of the Stalking Horse Agreement is set forth below:

Seller: Debtors.

Stalking Horse Purchaser: Formosa Flexible Packaging America, Inc.

Estimated Purchase Price: $5.000,000.00 in cash, subject to adjustment as provided in the Stalking Horse Contract.

Assets to be Sold: All of the Debtors' right, title and interest in and to accounts receivable, inventory, work in process, machinery, equipment, contract rights, general

intangibles and other personal property other than Excluded Assets (as defined in the Stalking Horse Contract).

Excluded Assets: Cash, certain Chapter 5 claims, contracts other than Assumed Executory Contracts and other assets specified as Excluded Assets in the Stalking Horse Contract.

Assumed Liabilities: None, except for cure claims related to Assumed Executory Contracts.

Transferred Contracts: The Debtors shall assign to Stalking Horse Purchaser the Assumed Executory Contracts designated by the Stalking Horse Purchaser. The Stalking Horse Purchaser shall have the option to add or delete contracts or leases from the Assumed Executory Contracts, which option shall be exercisable at any time prior to the Closing. The purchaser will be responsible for the payment of all cure and reinstatement costs or expenses of or relating to the assumption and assignment of the Assumed Executory Contracts.

Employees: Substantially all of the Debtors' employees will be offered employment by the Stalking Horse Purchaser.

## BIDDING PROCEDURES

31.     The Debtors intend to solicit bids for the assets in accordance with the Bidding Procedures. The Bidding Procedures, which are attached to the Bidding Procedures Order as Exhibit 1, describe, among other things, the assets available for sale, the manner in which bids become "qualified," the coordination of diligence efforts among the bidders and the Debtors, the receipt and negotiation of bids received, the conduct of an Auction, and the selection of the Back-Up Bidder. The Bidding Procedures reflect the Debtors' objective of conducting the Auction in a controlled but fair and open manner, while ensuring that the highest and best bid is obtained for the assets. In connection with an Auction, the Stalking Horse Purchaser has requested, and the Debtors have agreed (subject to the approval of this Court), to provide a break-up fee in the amount of $300,000.00 (the "Break-Up Fee").

32.     Certain of the key terms of the Bidding Procedures are set forth below:[1]

•     **Qualification as Bidder**: Any person or entity that wishes to participate in the bidding process for the real estate (each, a "Potential Bidder") must first become a "Qualifying Bidder." Except for the Stalking Horse Purchaser, parties may be qualified as a Qualifying Bidder up to the Bid Deadline (i.e., August 11, 2023 at 5:00 p.m. (ET)), but parties interested in submitting a bid for the assets are encouraged to qualify as soon as possible because the Bidding Procedures do not permit any due diligence or financing conditions in Qualifying Bids. Section 2 of the Bidding Procedures identifies the requirements to be deemed a Qualifying Bidder, which include, among other things, (1) entry into a confidentiality agreement in form and substance reasonably satisfactory to the Debtors and its advisors, and (2) the provision of sufficient information, as determined by the Debtors, to allow the Debtors and their advisors to determine that the Potential Bidder has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale transaction and to provide adequate assurance of future performance as required under section 365 of the Bankruptcy Code. Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate its contemplated transaction.

•     **Qualifying Bid**. Other than in the case of the Stalking Horse Purchaser (which is deemed to be a Qualifying Bidder), to be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and satisfy each of the requirements set forth in Section 6 of the Bidding Procedures (each, a "Bid Requirement"). These requirements include, but are not limited to, the requirements that the bids:

        a.      be in writing;

        b.      fully disclose the identity of the Potential Bidder and whether such party is an insider (as defined in section 101 of the Bankruptcy Code) of the Debtors, and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors wish to discuss the bid submitted by the Potential Bidder;

        c.      set forth the purchase price to be paid by such Potential Bidder, including what amount is being paid as cash and what amount constitutes an assumption of liabilities, and identify the liabilities proposed to be paid or assumed by such Potential Bidder;

---

[1] The following is a summary of the Bidding Procedures. It is qualified in its entirety by the actual terms and conditions of the Bidding Procedures as provided for in the Bidding Procedures Order, and parties are encouraged to read the Bidding Procedures and Bidding Procedures Order in their entirety. To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Bidding Procedures as provided for in the Bidding Procedures Order, the actual terms and conditions of the Bidding Procedures as provided for in the Bidding Procedures Order shall control. Capitalized terms used but not defined in this summary of the Bidding Procedures shall have the meanings ascribed to such terms in the Bidding Procedures.

d.     specify the assets that are included in the bid and state that such Potential Bidder offers to purchase those assets included in the Stalking Horse Contract upon substantially the same terms as, or terms more favorable to the estate than, the terms set forth in the Stalking Horse Contract;

e.     be accompanied by a clean and marked modified Transaction Agreement that reflects any variations from the Stalking Horse Contract, which Stalking Horse Contract shall serve as the precedent for any bids by a Potential Bidder;

f.     state that such Qualifying Bidder's offer is formal, binding and unconditional and is irrevocable until the conclusion of the Sale Hearing unless such party is the Successful Bidder or Back-Up Bidder (both as defined below), in which case such offer is formal, binding and unconditional and is irrevocable until two (2) business days after the closing of the Sale;

g.     state that such Potential Bidder is financially capable of consummating the transactions contemplated by the Transaction Agreement and provide written evidence in support thereof;

h.     contain such financial and other information to allow the Debtors to make a reasonable determination as to the Potential Bidder's financial and other capabilities to close the transactions contemplated by its proposed Transaction Agreement, including, without limitation, such financial and other information supporting the Potential Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code, including the Potential Bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to the Potential Bidder, in a form that allows the Debtors, within one (1) business day after receipt, to make such information available to any counterparties to any contracts or leases being assumed and assigned in connection with the Sale ("Counterparties") that have requested, in writing, such information; provided, however, that such information may be provided on a confidential basis;

i.     identify with particularity each and every executory contract and unexpired lease the assumption and assignment of which is a condition to close the transactions contemplated by the proposed Transaction Agreement;

j.     a commitment to close the transactions contemplated by the Transaction Agreement promptly upon the entry of the order approving the Sale;

k.     not request or entitle such Potential Bidder (other than the Stalking Horse Purchaser) to any break-up fee, termination fee, expense reimbursement or similar type of fee or payment;

l.     the aggregate consideration proposed by the Potential Bidder must equal or exceed the sum of the amount of (A) the purchase price under the Stalking Horse Contract, plus (B) plus $300,000.00 plus (C) at least $1,000.00 (i.e., an initial overbid must be for cash in an amount not less than $5,301,000.00, together with the assumption of the liabilities being assumed by the Stalking Horse Purchaser);

m.     not contain any contingencies of any kind, including, without limitation, contingencies related to financing, due diligence, or third party regulatory or internal approval;

n.     contain written evidence satisfactory to the Debtors that the Potential Bidder has a commitment for financing or other evidence of the ability to close the transactions contemplated by the Transaction Agreement;

o.     contain a written acknowledgement and representation that the Potential Bidder (i) has had an opportunity to conduct any and all due diligence regarding the assets, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and other information in making its Qualifying Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the real estate, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the Sale, and (iv) has not entered into any agreement with any other potential bidder concerning the Auction or the Sale or discloses any agreement with any other potential bidder concerning the Auction or Sale;

p.     provides for the Qualifying Bidder to serve as a backup bidder (the "Back-Up Bidder") if the Qualifying Bidder's bid is the next highest and best bid (the "Back-Up Bid") after the Successful Bid, in accordance with the terms of the Transaction Agreement;

q.     includes written evidence of authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the Transaction Agreement;

r.     provides a good faith cash deposit (the "Deposit") in an amount equal to ten (10%) percent of its bid, which shall be maintained in the attorney trust account of the Debtors' attorneys; and

s.     provides for liquidated damages in the event of the Qualifying Bidder's breach of, or failure to perform under, the Transaction Agreement equal to the amount of the Deposit.

- **Bid Deadline**. A Qualifying Bidder, other than a Stalking Horse Purchaser, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Debtors' counsel so as to be received on or before **August 11, 2023 at 5:00 p.m.**

**(ET)** (the "Bid Deadline"); provided that the Debtors may extend the Bid Deadline without further order of the Court. Any party that does not submit a bid by the Bid Deadline (as it may be extended) will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction.

• **Auction and Auction Procedures**: In the event that the Debtors timely receive one or more Qualifying Bids, the Debtors shall conduct an Auction. The Auction shall be held on **August 14, 2023 at 10:00 a.m. (ET)** via Zoom or similar electronic platform.

• **Sale Hearing**: The Successful Bid (which, if no Auction is held, may be the Stalking Horse Contract) and any Back-Up Bid will be subject to approval by the Bankruptcy Court. Subject to Bankruptcy Court approval, the Sale Hearing to approve the Successful Bid(s) and any Back-Up Bid(s) shall take place on **August 14, 2023 at 2:00 p.m. (ET)**. Subject to Bankruptcy Court approval, the Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtors' Chapter 11 cases.

## NOTICE PROCEDURES FOR THE SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING

33. The Debtors propose that this Motion, the scheduling an expedited hearing thereon and the notice annexed hereto as Exhibit 2 (collectively, the "Sale Notice") constitute notice of the proposed transaction. The Debtors intend to serve the Sale Notice by electronic mail or facsimile on: (1) the Office of the United States Trustee; (2) all secured creditors or their counsel; (3) all non-Debtor Counterparties to Assumed Executory Contracts; (4) all persons known to have expressed an interest in acquiring all or any portion of the Debtors' assets or making an equity or other investment in the Debtors within the twelve months prior to the Petition Date; (5) counsel to the Stalking Horse Purchaser; and (6) all other parties that have filed a notice of appearance and demand for service of pleadings as of the date of service (collectively, the "Transaction Notice Parties"). In addition, the Debtors will serve the Sale Notice on all of the Debtors' known creditors and equity holders (for which identifying information and addresses are available to the Debtors).

## ASSUMPTION AND ASSIGNMENT PROCEDURES

34. To facilitate the Sale, the Debtors seek authority to assume and assign to the Stalking Horse Purchaser, subject to higher and better bids, the Assumed Executory Contracts in

accordance with the proposed "Assumption and Assignment Procedures." The Assumption and Assignment Procedures, which are detailed in the Bidding Procedures Order, include the following:

- The identification of contracts that could potentially be assumed or assumed and assigned, and the proposed Cure Amounts.

- Service of an assumption notice, substantially in the form attached to the Bidding Procedures Order as Exhibit 3.

- The ability of Counterparties to the Assumed Executory Contracts to object to the Debtors' ability to assume and/or assign the contract or the proposed Cure Amount at the Sale Hearing.

- The condition that failure to timely object to the proposed assumption, assignment (if applicable) or Cure Amount will result in the Counterparty being deemed to consent to the proposed assumption or assumption and assignment and the Cure Amount.

## RELIEF REQUESTED

35.     By this Motion, the Debtors seek the entry of: (a) the Bidding Procedures Order, (i) scheduling a date for the Sale Hearing, (ii) authorizing and approving the Bidding Procedures and the Assumption and Assignment Procedures and the form and manner of notice thereof, and (iii) granting related relief; and (b) a Sale Order (i) authorizing and approving the Debtors' entry into the Stalking Horse Contract with the Stalking Horse Purchaser, subject to higher and better bids, (ii) authorizing and approving the Sale, free and clear of all Encumbrances, to the Stalking Horse Purchaser, subject to higher and better bids, (iii) authorizing and approving the assumption and assignment of the Assumed Executory Contacts in connection with such Sale, and (iv) granting related relief.

36.     The Bidding Procedures Order, if approved, will establish the following timeline, which the Debtors believe is necessary to achieve a value-maximizing transaction:

| Milestones | Proposed Dates[2] |
|---|---|
| Bidding Procedures Hearing | August 10, 2023 at 2:00 p.m. (ET) |
| Deadline to Serve Assumption Notice | August 10, 2023 at 5:00 p.m. |
| Deadline to Object to Assumption Notice | August 11, 2023 at 5:00 p.m. (ET) |
| Sale Objection Deadline (including objections to a sale to a Stalking Horse Purchaser) | August 11 2023 at 5:00 p.m. (ET) |
| Bid Deadline | August 11, 2023 at 5:00 p.m. (ET) |
| Auction | August 14, 2023 at 10:00 a.m. (ET) |
| Sale Hearing | August 14, 2023 at 2:00 p.m. |
| Outside Closing Date | August 15, 2023 |

37.     The Debtors respectfully submit that this proposed timeline is reasonable and necessary under the circumstances of this case.  Such timeline will allow parties in interest sufficient time to formulate bids while also permitting the Debtors to act quickly in pursuing a transaction that will maximize value.

38.     Finally, the Debtors will also promptly make the disclosures required under Bankruptcy Rule 6004 with respect to any definitive Transaction Agreement.

## BASIS FOR RELIEF

**A**.     **Sufficient Business Justification Exists for Consummation of the Sale under Bankruptcy Code Sections 105(a) and 363(b)**

---

[2]  All hearing dates proposed herein are subject to the Court's availability and approval.

39.     Pursuant to section 105(a) of the Bankruptcy Code, a "[c]ourt may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code further provides that a trustee, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Although section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts have required that such use, sale or lease be based upon the sound business judgment of the debtor. See, e.g., Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (internal citation omitted); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070–71 (2d Cir. 1983); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 147–48 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of In re Lionel Corp.); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175–76 (D. Del. 1991) (holding that the Third Circuit adopted the "sound business judgment" test in Abbotts Dairies); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999) (same).

40.     The demonstration of a valid business justification by the trustee leads to a strong presumption "that in making [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

41.     In the present case, the Debtors' decision to market and sell their assets through a section 363 sale represents a reasonable exercise of its business judgment and, accordingly, the

Sale to the Stalking Horse Purchaser or a higher bidder should be approved under sections 105(a) and 363(b) of the Bankruptcy Code.

42.     The Debtors seek to obtain the highest and best value for the assets and are committed to considering all viable proposals in furtherance of that goal.  The quick, open and fair auction and sale process contemplated by the Bidding Procedures will ensure that the estate obtains the highest and best value available for the assets by allowing the market to set the purchase price of such assets (or test the purchase price under the Stalking Horse Contract). Furthermore, adoption of the Bidding Procedures will ensure the fairness and reasonableness of the consideration to be paid by any Successful Bidder and establish that the Debtors and the Successful Bidder have proceeded in good faith.

43.     Additionally, the Debtors believe that the notice procedures described above are reasonable and adequate under the circumstances. Bankruptcy Rules 2002(a) and (c) require the Debtors to notify creditors of the Sale, the terms and conditions of the Sale, the time and place of the Auction, and the deadline for filing any objections. The Debtors submit that the proposed notice procedures fully comply with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the Sale, the Bidding Procedures, the Auction, and the Sale Hearing to creditors and all other parties in interest that are entitled to notice, as well as those parties that have expressed a bona fide interest in acquiring the assets.

44.     The Sale conducted in accordance with the Bidding Procedures will generate significant value for the Debtors' estate and represents the best path forward for maximizing recoveries to stakeholders. The Debtors submit that ample business justification exists for the consummation of the Sale and therefore request that this Court approve the Sale to the Stalking Horse Purchaser or a higher bidder.

**B.      The Sale of the Assets under the Stalking Horse Contract, Free and Clear of All Encumbrances, is Authorized under Bankruptcy Code Section 363(f)**

45.     Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). This provision is supplemented by section 105(a) of the Bankruptcy Code, which, as noted above, provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C.§ 105(a).

46.     Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the assets "free and clear" of liens and interests.  See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that because section 363(f) is written in the disjunctive, a court may approve a sale free and clear if any one subsection is met); see also Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.), 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (same); In re Bygaph, Inc., 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same). Furthermore, a debtor possesses broad authority to sell assets free and clear of liens. See In re Trans World Airlines, Inc., 322 F.3d 283, 289 (3d Cir. 2003).

47.     The Debtors submit that, in the interest of attracting the best offers, it is appropriate to sell the assets free and clear of any and all Encumbrances in accordance with section 363(f) of the Bankruptcy Code because one or more of the tests of section 363(f) is, or will be, satisfied with respect to any Sale.

48.     The Debtors further anticipate that they will be able to satisfy one or more of the conditions set forth in section 363(f). The Debtors will serve the Sale Notice on all parties known

to assert an Encumbrance against the Debtors' assets such that lienholders will receive notice and will be given sufficient opportunity to object to the relief requested. Lienholders that are on notice of, and do not object to, the Sale should be deemed to have consented to that Sale. See, e.g., FutureSource LLC v. Reuters Ltd., 312 F.3d 281, 285-86 (7th Cir. 2002) ("[L]ack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); Hargrave v. Twp. of Pemberton (In re Tabone, Inc.), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (holding that creditor's failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); In re Elliot, 94 B.R. at 345 (same). In the event of an objection from a secured creditor to the Debtors requested section 363(f) finding, the Debtors reserve the right to demonstrate that the other provisions of section 363(f) have been satisfied.

**C.**     **The Sale of Assets Should Be Free of Any Successor Liability**

49.     Under the terms of the proposed Sale, Stalking Horse Purchaser (or the Successful Bidder) will not be liable for any of the Debtors' liabilities as a successor to the Debtors' business or otherwise (the "Excluded Liabilities"), unless expressly assumed. Extensive case law exists providing that claims cannot be asserted against the prevailing bidder, but rather are directed to the proceeds of a sale of property conducted pursuant to §363 of the Bankruptcy Code.

50.     Section 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests." The term "any interests," as used in section 363(f), is not defined anywhere in the Bankruptcy Code. Folger Adam Security v. DeMatteis/MacGregory, JV, 209 F.3d 252, 259 (3d Cir. 2000). In In re Trans World Airlines, Inc., 322 F.3d 283 (3d Cir. 2003), the Third Circuit specifically addressed the scope of the term "any interest." 322 F.3d at 288-89. The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only in rem

interests in property," the trend in modern cases is towards "a broader interpretation which includes other obligations that may flow from ownership of the property." Id. at 289 (citing 3 Collier on Bankruptcy 363.06[1]). As determined by the Fourth Circuit in In re Leckie Smokeless Coal Co., 99 F.3d 573, 581-582 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in Folger, supra, the scope of § 363(f) is not limited to in rem interests. Thus, the Third Circuit in Folger adopted the Leckie holding that the debtors "could sell their assets under §363(f) free and clear of successor liability that otherwise would have arisen under federal statute." Folger, 209 F.3d, at 258.

51.     Courts have consistently held that a purchaser of a debtor's assets pursuant to a § 363 sale takes free from successor liability resulting from pre-existing claims. See, Ninth Avenue Remedial Group, 195 B.R. 716, 732 (Bankr. N.D. Ind. 1996) (stating that a bankruptcy court has the power to sell assets free and clear of any interest that could be brought against the bankruptcy estate during the bankruptcy); In re Johns-Manville Corp., 837 F.2d 89 (2d Cir.), cert denied, 488 U.S. 868 (1988) (channeling of claims to proceeds consistent with intent of sale free and clear under section 363(f) of the Bankruptcy Code; In re New England Fish Co., 19 B.R. 323 (Bankr. W.D. Wash. 1982) (transfer of property in free and clear sale included free and clear of Title VII employment discrimination and civil rights claims of debtor's employees); In re Hoffman, 53 B.R. 874 (Bankr. D.R.I. 1985), aff'd, 65 B.R. 985 (D.R.I. 1986) (transfer of liquor license free and clear of any interest permissible even though the estate had unpaid taxes); In re All Am. of Ashburn, Inc., 56 B.R. 186 (Bankr. N.D. Ga.), appeal decided by, 805 F.2d 1515 (11th Cir. 1986) (product liability claims precluded on successor doctrine in a sale of assets free and clear); In re WBQ Partnership, 189 B.R. 97 (Bankr. E.D. Va. 1995) (State of Virginia's right to recapture depreciation is an interest within the meaning of section 363(f)).

52.     In this matter, the Stalking Horse Purchaser (or the Successful Bidder) and the Debtors will be wholly unrelated entities.  For obvious reasons, the very purpose of an order authorizing the transfer of assets free and clear of all "interests" would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against the purchaser arising from the Debtors' pre-sale conduct.  Under § 363(f) of the Bankruptcy Code, the Stalking Horse Purchaser (or the Successful Bidder) is entitled to know that the assets are not subject to latent claims that will be asserted against the Stalking Horse Purchaser (or the Successful Bidder) after the proposed transaction is completed.  Accordingly, the Sale Order should provide that the Stalking Horse Purchaser (or the Successful Bidder) is not liable as a successor under any theory of successor liability for claims that encumber or relate to, or purportedly encumber or relate to, the assets being sold.

**D.     The Sale Should be Subject to the Protections of Section 363(m)**

53.     Section 363(m) of the Bankruptcy Code provides, in part, that the reversal or modification on appeal of an authorization of a sale pursuant to section 363(b) or section 363(c) of the Bankruptcy Code does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. See 11 U.S.C. § 363(m). In approving the Sale free and clear of Encumbrances, the Debtor requests that the Court find that the purchaser of the real estate in accordance with the Bidding Procedures is entitled to the protections afforded by section 363(m) of the Bankruptcy Code. Such relief is appropriate where the selection of the Successful Bidder has resulted from a competitive bidding process and arm's-length, good-faith negotiations, and parties in interest will have the opportunity to review and object to a proposed transaction.  See Esposito v. Title Ins. Co. of Pa.

(In re Fernwood Mkts.), 73 B.R. 616, 620 (Bankr. E.D. Pa. 1987) (good faith purchasers are protected under section 363(m) where notice is provided to lienholders).

**E.**      **The Court Should Approve the Bidding Procedures**

54.      The key objective in any sale of property of a debtor's estate is to maximize the value received by the estate. See In re Mushroom Transp. Co., 382 F.3d 325, 339 (3d Cir. 2004) (finding that debtor "had a fiduciary duty to protect and maximize the estate's assets"); Official Comm. of Unsecured Creditors of Cybergenics, Corp v. Chinery, 330 F.3d 548, 573 (3d Cir. 2003) (same). Procedures used to enhance competitive bidding support this objective and, therefore, are appropriate in the context of bankruptcy sales. See In re O'Brien Envtl. Energy, Inc., 181 F.3d 527, 537 (3d Cir. 1999); see also Integrated Res. Inc., 147 B.R. at 659 (stating that bidding procedures "encourage bidding and . . . maximize the value of the debtor's assets").

55.      The Debtors have conceived the Bidding Procedures to promote an expeditious, competitive and fair bidding process that maximizes value for the Debtors' estates and creditors. The Bidding Procedures will allow the Debtors to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders, thereby increasing the likelihood that the Debtors will receive the highest and best possible consideration for the assets. Furthermore, the Bidding Procedures provide an appropriate framework for the Debtors to review, analyze and compare any bids received in order to determine which bids are in the best interests of the Debtors' estates and their creditors.  The Debtors submit that this timetable is fair and reasonable in light of the condition of the Debtors' businesses.

56.      The Debtors further submit that the forgoing procedures are fair and transparent and will derive the highest and best bids for the assets. Therefore, the Debtors request that the Court approve the Bidding Procedures, including the dates established thereby for the Auction and the Sale Hearing.

**F.     The Assumption and Assignment of the Assumed Executory Contracts in Connection with the Sale Satisfies Bankruptcy Code Section 365**

57.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a trustee, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." See 11 U.S.C. § 365(a). Courts have held that "[t]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 Collier on Bankruptcy ¶ 365.01[1] (15th ed. 1993)).

58.     As set forth above, the Sale should provide significant benefits to the estate by maximizing the value of the Debtors' assets. To that end, permitting the Debtors to assume and assign the Assumed Executory Contracts, to the extent applicable, should provide the Debtors with flexibility to enter into a transaction that will obtain the greatest benefits from any Sale. In addition, under section 365(k) of the Bankruptcy Code, the assignment by a trustee to an entity of a contract or lease "relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment." See 11 U.S.C. § 365(k). Thus, following an assignment of any Assumed Executory Contract, the estate will be relieved from any liability for any subsequent breach associated therewith.

59.     Furthermore, section 365(b)(1) of the Bankruptcy Code requires that any outstanding defaults under the Assumed Executory Contracts must be cured or that adequate assurance be provided that such defaults will be promptly cured. See 11 U.S.C. § 365(b)(1). The Debtors propose to file with this Court and serve on each Counterparty to an Assumed Executory Contract an Assumption Notice that indicates the proposed Cure Amount for each such contract. As such, each Counterparty will have the opportunity to object to the proposed assumption and

assignment to the Successful Bidder and to the proposed Cure Amount, if applicable. Moreover, the payment or reserve of the applicable Cure Amount will be a condition to the Debtors' assumption and assignment of any Assumed Executory Contract.

60.     Relatedly, section 365(f)(2) of the Bankruptcy Code provides that a trustee may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." See 11 U.S.C. § 365(f)(2). The words "adequate assurance of future performance" must be given a "practical, pragmatic construction" in light of the facts and circumstances of the proposed assumption. See In re Fleming Cos., Inc., 499 F.3d 300, 307 (3d Cir. 2007) (internal citation omitted); Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (same); see also In re Natco Indus., Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (finding that adequate assurance of future performance does not mean absolute assurance that debtor will thrive and profit); In re Bon Ton Rest. & Pastry Shop, Inc., 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").

61.     Specifically, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. See In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (holding that adequate assurance of future performance is given where assignee of lease has financial resources and expresses willingness to devote sufficient funding to the business to ensure its success, and that in the leasing context, chief determinant of adequate assurance is whether rent will be paid).

62.     Here, the Stalking Horse Purchaser (or Successful Bidder) will have provided adequate assurance of future performance with respect to any Assumed Executory Contract. In order for its bid to be deemed a Qualifying Bid, each Qualifying Bidder will be required to provide

evidence supporting its ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code (the "Adequate Assurance Information"), including: (a) the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to such Qualifying Bidder; (b) a contact person for the proposed assignee that the applicable Counterparty may directly contact in connection with the adequate assurance of future performance; and (c) the actual assignee's identity. Moreover, to the extent available, the Adequate Assurance Information may also include: (x) a corporate organization chart or similar disclosure identifying ownership and control of the proposed assignee and (y) financial statements, tax returns and annual reports. Furthermore, given that the Debtors and/or Successful Bidder will have the opportunity to submit evidence that they have satisfied all requirements for the assumption and assignment of the Assumed Executory Contracts at the Sale Hearing, the Court and other interested parties will have the opportunity to evaluate the ability of the Successful Bidder to provide adequate assurance of future performance.

63.    The Debtors request that the Sale Order provide that the Assumed Executory Contracts will be transferred to, and remain in full force and effect for the benefit of the Successful Bidder, notwithstanding any provisions in the Assumed Executory Contracts that prohibit such assignment.

64.    Any objection to the assumption and assignment of any of the Assumed Executory Contracts or the Cure Amounts should be filed no later than the commencement of the Sale Hearing. If no objection is timely received, the Cure Amounts shall be controlling notwithstanding anything to the contrary in the Assumed Executory Contracts or any related documents, and each Counterparty shall be forever barred from asserting a different Cure Amount or any other claim arising prior to the assignment against the Debtors, the Stalking Horse Purchaser, or the Successful Bidder as to any of the Assumed Executory Contracts. If an objection to any assumption and

assignment of any of the Assumed Executory Contracts is made, a hearing on such objection shall be held at or subsequent to the Sale Hearing. If an objection by a Counterparty is made only with respect to the Cure Amount in respect of any of the Assumed Executory Contract, the parties shall agree, in advance of the closing, upon a reasonable amount to be escrowed by the Debtors or the Successful Bidder pending a subsequent hearing by the Court after the Sale Hearing to determine the allowed amount of the Cure Amount.

**G.      The Sale of the Debtors' Assets Does Not Constitute a Sub Rosa Plan of Reorganization**

67.      The proposed Sale of the assets does not constitute a sub rosa plan of reorganization as contemplated by <u>Pension Benefit Guar. Corp. v. Braniff Airways, Inc.</u> (<u>In re Braniff Airways, Inc.</u>), 700 F.2d 935, 939-940 (5th Cir. 1983), and no such plan is contemplated other than in accordance with Section 1129 of the Bankruptcy Code.

68.      Therefore, the Debtors respectfully request that the Court (a) approve the proposed assumption and/or assumption and assignment of the Assumed Executory Contracts, and (b) find all anti-assignment provisions of such contracts to be unenforceable under §365(f) of the Bankruptcy Code.[3]

**WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h) AND 6006(d)**

69.      Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Furthermore, Bankruptcy Rule

---

[3]  Section 365(f)(1) provides that "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease..." 11 U.S.C. § 365(f)(1). Section 365(f)(3) further provides that "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee." 11 U.S.C. § 365(f)(3).

6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d).

70.     For all of the foregoing reasons, the Debtors submit that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) and 6006(d), to the extent applicable.

## NOTICE

71.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) all secured parties or their counsel; (iii) all parties known by the Debtors to assert a lien on any of the Debtors' assets; (iv) all Counterparties or their counsel; (v) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002, and all parties appearing on the certificate of service filed herewith. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully request (i) entry of the Bidding Procedures Order granting the relief requested herein, (ii) entry of a Sale Order approving the Stalking Horse Contract and the Sale of the Acquired Assets to the Stalking Horse Purchaser, subject to higher and better bids, and the assumption and assignment of the Assumed Executory Contracts consistent with the terms of the Stalking Horse Contract, and (iii) such other and further relief as is just and proper.

Dated:  August 3, 2023

**KURTZMAN | STEADY, LLC**

**By: /s/ Jeffrey Kurtzman**
Jeffrey Kurtzman, Esquire
555 City Avenue, Suite 480
Bala Cynwyd, PA 19004
Telephone:  (215) 839-1222
Facsimile:  (609) 482-8011
Email:  kurtzman@kurtzmansteady.com

*Attorneys for Debtors*

**Exhibit 1**

**BIDDING PROCEDURES**

     R.B. Dwyer Co., Inc., Color Craft Flexible Printing, LLC and Ideal Sleeves International, LLC (collectively, the "Debtors") are soliciting bids to acquire the Debtors' assets.

     On August [10], 2023, the United States Bankruptcy Court for the Middle District of Pennsylvania (the "Court") entered an order [Doc. No. ____] (the "Bidding Procedures Order"), which, among other things, authorized the Debtors to solicit bids and approved the procedures (collectively, the "Bidding Procedures"), which are to be used by the Debtors in connection with the sale (the "Sale") of all or substantially all of its assets, including the assumption and assignment of oil and gas leases, free and clear of all liens, claims, encumbrances and other interests (collectively, the "Encumbrances"). Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

     If, and to the extent that, prior to the Bid Deadline (as defined below), the Debtors receive a Qualifying Offer to purchase the assets pursuant to a Transaction Agreement between the Debtors and such offeror in accordance with the procedures set forth in the Bidding Procedures Order, the Debtors will conduct an Auction. Notwithstanding the selection of any Stalking Horse Purchaser, the Debtors will continue to solicit bids and accept bids through the Bid Deadline (as defined below).

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS SHOULD CONTACT:**

     **Jeffrey Kurtzman, Esquire**
     **Kurtzman | Steady, LLC**
     **Telephone: (215) 839-1222**
     **Email: kurtzman@kurtzmansteady.com**

**Summary of Important Dates**

| Milestones | Proposed Dates[4] |
|---|---|
| Sale Procedure Hearing | August 10, 2023 at 2:00 p.m. (ET) |
| Deadline to Serve Assumption Notice | August 10, 2023 at 5:00 p.m. (ET) |
| Deadline to Object to Assumption Notice | August 11, 2023 at 5:00 p.m. (ET) |
| Sale Objection Deadline (including objections to a sale to a Stalking Horse Purchaser) | August 11, 2023 at 5:00 p.m. (ET) |

---

[4] All hearing dates proposed herein are subject to the Court's availability and approval.

| Bid Deadline | August 11, 2023 at 5:00 p.m. (ET) |
|---|---|
| Auction | August 14, 2023 at 10:00 a.m. (ET) |
| Sale Hearing | August 14, 2023 at 2:00 p.m. (ET) |
| Outside Closing Date | August 15, 2023 |

### 1. Assets to be Sold

All or substantially all of the Debtor's assets.

### 2. Participation Requirements

Any person or entity that wishes to conduct due diligence and gain access to information in the Debtors' possession concerning the assets being sold (each such person or entity, a "Potential Bidder") must submit to the Debtors and their advisors an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors.

Any Potential Bidder that wishes to participate in the bidding process for the assets must first become a "Qualifying Bidder." Except for the Stalking Horse Purchaser, parties may be qualified as a Qualifying Bidder up to the Bid Deadline (i.e., August 11, 2023 at 5:00 p.m. (ET)), but parties interested in submitting a bid are encouraged to qualify as soon as possible because the Bidding Procedures do not permit any due diligence or financing conditions in Qualifying Bids. To become a Qualifying Bidder, Potential Bidders must submit sufficient information, as determined by the Debtors to allow the Debtors to determine that the Potential Bidder (i) has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale transaction, including, but not limited to, current audited financial statements of the Potential Bidder (or such other form of financial disclosure acceptable to the Debtors in their reasonable discretion) and (ii) can provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such bidder pursuant to section 365 of the Bankruptcy Code in connection with the Sale.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate its contemplated transaction.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures, the Stalking Horse Purchaser shall be considered a Qualifying Bidder.

To the extent that a bid is proposed by a group or committee to which Bankruptcy Rule 2019 applies, such parties must promptly file the statement required by such rule as a condition to becoming a Qualifying Bidder.

3.      **Bankruptcy Court Jurisdiction**

In conjunction with any actions or proceedings arising from or relating to the Bidding Procedures, the Sale, the Auction (as defined below), the acts or omissions of the Debtors' representatives and/or the construction and enforcement of the contemplated transaction documents of such parties, any Potential Bidders and Qualifying Bidders shall: (a) be deemed to have waived any right to a jury trial and consented and submitted to the exclusive jurisdiction of the Court, (b) bring any such action or proceeding in the Court, and (c) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

4.      **Form of Agreement**

Each Qualifying Bidder, must include with its bid:

• **Qualification as Bidder**: Any person or entity that wishes to participate in the bidding process for the all or any portion of the assets (each, a "Potential Bidder") must first become a "Qualifying Bidder." Except for the Stalking Horse Purchaser, parties may be qualified as a Qualifying Bidder up to the Bid Deadline, but parties interested in submitting a bid for the assets are encouraged to qualify as soon as possible because the Bidding Procedures do not permit any due diligence or financing conditions in Qualifying Bids. Section 2 of the Bidding Procedures identifies the requirements to be deemed a Qualifying Bidder, which include, among other things, (1) entry into a confidentiality agreement in form and substance reasonably satisfactory to the Debtors, and (2) the provision of sufficient information, as determined by the  Debtors, to allow the Debtors to determine that the interested party has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale transaction and to provide adequate assurance of future performance as required under section 365 of the Bankruptcy Code. Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate its contemplated transaction.

**Qualifying Bid**. Other than in the case of the Stalking Horse Purchaser, to be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and satisfy each of the requirements set forth in Section 6 of the Bidding Procedures (each, a "Bid Requirement"). These requirements include, but are not limited to, the requirements that the bids:

(a) an executed asset purchase agreement or other agreement for the applicable Sale (each, a "Transaction Agreement"), clean and marked against the form provided by the Debtors, which must include the following:

(i)      identification of the specific assets to be acquired either in the Transaction Agreement itself or as a schedule to the Transaction Agreement;

(ii)     full disclosure of the identity of the bidder and whether such party is an insider (as defined in section 101 of the Bankruptcy Code) or affiliate of the Debtors, along with the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors wish to discuss the bid submitted by the Qualifying Bidder;

(iii)     the purchase price to be paid by such Qualifying Bidder, including what amount is being paid as cash and what amount, if any, constitutes the assumption of liabilities;

(iv)     identify whether the Qualifying Bidder or the Debtors shall be responsible for (a) any transfer or similar taxes that arise from the Sale and any cure costs required to be paid to assume and assign executory contracts and unexpired leases that are included in the bid;

(v)     a commitment to close the transactions contemplated by the Transaction Agreement promptly upon entry of the order approving the Sale;

(vi)     contain a written acknowledgement and representation that the bidder (i) has had an opportunity to conduct any and all due diligence regarding the assets, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and other information in making its bid, (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the Sale, and (iv) has not entered into any agreement with any other potential bidder concerning the Auction or the Sale or discloses any agreement with any other potential bidder concerning the Auction or Sale;

(vii)     a statement that the Transaction Agreement is not subject to contingencies of any kind, including, including without limitation, contingencies related to financing, due diligence or third party, regulatory or internal approval; and

(viii)     a statement that the Qualifying Bidder has obtained any required internal corporate, legal or other authorizations to close a sale transaction and to provide adequate assurance of future performance as required under section 365 of the Bankruptcy Code.

5.     **Due Diligence**

Subject to the execution of a confidentiality agreement by a Potential Bidder or Qualifying Bidder, the Debtors will provide any Potential Bidder or Qualifying Bidder with reasonable access to information in its possession.  All additional due diligence requests shall be directed as provided in the contact information set forth above.

All due diligence materials provided to Potential Bidders and Qualifying Bidders shall be subject to the limitations on use and disclosure included in any confidentiality agreement entered into pursuant to the Bidding Procedures.

Notwithstanding any limitations provided for in any due diligence materials in the Debtors' possession, including, without limitation, any non-disclosure, confidentiality or similar provisions, the Debtors shall be authorized to provide due diligence information to Potential Bidders that have executed a confidentiality agreement.

**6.**     **Bid Requirements**

To be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and must satisfy each of the following requirements (each, a "Bid Requirement"):

      a.      be in writing;

      b.      fully disclose the identity of the Qualifying Bidder and whether such party is an insider (as defined in section 101 of the Bankruptcy Code) of the Debtors, and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors wish to discuss the bid submitted by the Qualifying Bidder;

      c.      set forth the purchase price to be paid by such Qualifying Bidder, including what amount is being paid as cash and identify the liabilities proposed to be paid or assumed by such Qualifying Bidder;

      d.      specify the assets that are included in the bid and state that such Qualifying Bidder offers to purchase those assets included in the Transaction Agreement upon substantially the same terms as, or terms more favorable to the estates than, the terms set forth in the Stalking Horse Contract;

      e.      be accompanied by a clean and marked modified Transaction Agreement that reflects any variations from the Stalking Horse Contract;

      f.      state that such Qualifying Bidder's offer is formal, binding and unconditional and is irrevocable until the conclusion of the Sale Hearing unless such party is the Successful Bidder or Back-Up Bidder (both as defined below), in which case such offer is formal, binding and unconditional and is irrevocable until two (2) business days after the closing of the Sale of the Assets;

      g.      state that such Qualifying Bidder is financially capable of consummating the transactions contemplated by the Transaction Agreement and provide written evidence in support thereof;

h.　　contain such financial and other information to allow the Debtors to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by its proposed Transaction Agreement, including, without limitation, such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code, including the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to the Qualifying Bidder, in a form that allows the Debtors, within one (1) business day after receipt, to make such information available to any counterparties to any contracts or leases being assumed and assigned in connection with the Sale ("Counterparties") that have requested, in writing, such information, provided, however, that such information may be provided on a confidential basis;

i.　　identify with particularity each and every executory contract, unexpired lease and unexpired sublease the assumption and assignment of which is a condition to close the transactions contemplated by the proposed Transaction Agreement;

j.　　a commitment to close the transactions contemplated by the Transaction Agreement promptly upon entry of the order approving the sale;

k.　　not request or entitle such Qualifying Bidder (other than a Stalking Horse Purchaser) to any break-up fee, termination fee, expense reimbursement or similar type of fee or payment;

l.　　the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (A) the purchase price under the Stalking Horse Contract, plus (B) at least $301,000.00;

m.　　not contain any contingencies of any kind, including, without limitation, contingencies related to financing, due diligence, or third party regulatory or internal approval;

n.　　contain written evidence satisfactory to the Debtors that the Qualifying Bidder has a commitment for financing or other evidence of the ability to close the transactions contemplated by the Transaction Agreement;

o.　　contain a written acknowledgement and representation that the Qualifying Bidder (i) has had an opportunity to conduct any and all due diligence regarding the assets, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and other information in making its Qualifying Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the Sale, and (iv) has not entered into any agreement with any other potential bidder concerning the Auction or the Sale or discloses any agreement with any other potential bidder concerning the Auction or Sale;

p.      provides for the Qualifying Bidder to serve as a backup bidder (the "Back-Up Bidder") if the Qualifying Bidder's bid is the next highest and best bid (the "Back-Up Bid") after the Successful Bid (as defined below), in accordance with the terms of the Transaction Agreement;

q.      includes written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the Transaction Agreement;

r.      provides a good faith cash deposit (the "Deposit") in an amount equal to ten (10%) percent of the cash portion of the purchase price, which shall be held in the trust account of the Debtors' counsel; and

s.      provides for liquidated damages in the event of the Qualifying Bidder's breach of, or failure to perform under, the Transaction Agreement equal to the amount of the Deposit.

**7.      Credit Bidding**

Any party that wishes to submit a credit bid on or before the Bid Deadline either as a component or as the entirety of the consideration for its bid shall identify the amount of the claim and the nature, extent and priority of the lien upon which its credit bid is premised.   Any party holding a lien on assets to be sold may credit bid the amount of its undisputed secured claim.

**8.      Bid Deadline**

A Qualifying Bidder, other than the Stalking Horse Purchaser, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Debtors so as to be received on or before August 11, 2023 at 5:00 p.m. (ET) (the "Bid Deadline"); provided that the Debtors may extend the Bid Deadline without further order of the Court. Any party that does not submit a bid by the Bid Deadline (as it may be extended) will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction.

**Any party that does not submit a bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction. Consistent with the terms of any confidentiality agreements executed by them, all Potential Bidders and Qualifying Bidders shall maintain as confidential, up until the Auction, the fact that they have submitted a bid and the terms and conditions of such bid**.

**9.      Auction**

**Auction and Auction Procedures**: In the event that the Debtors timely receive one or more Qualifying Bids, the Debtors shall conduct an Auction. The Auction shall be held on **August 14, 2023 at 10:00 a.m. (ET)** via Zoom or similar electronic platform.

**EXHIBIT 2**

[Sale Notice]

## UNITED STATES BANKRUPTCY COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 11 |
| | : |
| R.B. DWYER CO, INC. | : CASE NO. 5:23-bk-01420-MJC |
| IDEAL SLEEVES INTERNATIONAL,: | CASE NO. 5:23-bk-01418-MJC |
| LLC, | : CASE NO. 5:23-bk-01421-MJC |
| COLOR CRAFT FLEXIBLE PRINTING,: | |
| LLC | : |
| DEBTORS-IN-POSSESSION | : (Jointly Administered) |

## NOTICE OF PROPOSED SALE, BIDDING PROCEDURES,
## <u>AUCTION, AND SALE HEARING</u>

**PLEASE TAKE NOTICE** that on August 3, 2023, the above-captioned debtors (the "Debtors") filed a motion (the "Motion) [Doc. No. __] with the United States Bankruptcy Court for the Middle District of Pennsylvania (the "Bankruptcy Court") seeking, among other things, the entry of an order (the "Bidding Procedures Order") (i) approving proposed bidding procedures (the "Bidding Procedures") by which the Debtors will solicit and select the highest or otherwise best offer for the sale of all or substantially all of the Debtors' assets and executory contracts through a sale (the "Sale"), (ii) approving the form and manner of notice with respect to certain procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures"), (iii) approving the form and manner of notice with respect to the Sale, (iv) scheduling an auction (the "Auction") if the Debtor receives one or more timely and acceptable Qualified Bids, and (v) scheduling a final hearing (the "Sale Hearing") to approve the sale of the assets.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures Order, if the Debtors receive one or more Qualified Bids for the assets, the Debtors will conduct the Auction on August 14, 2023 at 10:00 a.m. (prevailing Eastern time) via Zoom or similar electronic platform. Any party that wishes to submit a bid for all or any portion of the assets must do so in accordance with the Bidding Procedures by August 11, 2023 at 5:00 p.m. (the "Bid Deadline"). All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of the sale of the assets, free and clear of liens, claims, encumbrances and interests pursuant to Bankruptcy Code section 363(b) and (f), and the assumption and assignment of executory contracts pursuant to Bankruptcy Code section 365(a), (b) and (f) shall be held before the Honorable Mark J. Conway, United States Bankruptcy Judge for the Middle District of Pennsylvania at the Bankruptcy Court, Max Rosenn U.S. Courthouse Courthouse, 197 S. Main Street, Wilkes-Barre, PA on August [14], 2023 at 2:00 p.m. (prevailing Eastern time). The Sale Hearing may be adjourned from time without further notice to creditors or other interested parties other than by announcement of the adjournment in open court or by notice filed on the docket of the Debtors' Chapter 11 cases.

**PLEASE TAKE NOTICE** that objections to the Sale (including objections to proposed cure amounts relating to Assumed Executory Contracts) must be filed and served so as to be actually received by the following parties: (i) Jeffrey Kurtzman, Esquire, Kurtzman | Steady, LLC, 555 City Avenue, Suite 480, Bala Cynwyd, PA 19004, kurtzman@kurtzmansteady.com; (and ii) all parties on the Rule 2002 service list maintained by the Clerk of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that any objections to adequate assurance of future performance and/or a proposed cure amount must be filed by the start of the Sale Hearing.

<u>**CONSEQUENCES OF FAILING TIMELY TO ASSERT AN OBJECTION**</u>

**ANY PART OR ENTITY WHICH FAILS TIMELY TO FILE AND SERVE AN OBJECTION ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES MAY BE FOREVER BARRED FROM ASSERTING AN OBJECTION TO THE SALE, INCLUDING THE CONVEYANCE OF THE ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS.**

**PLEASE TAKE FURTHER NOTICE** that this Notice is subject to the terms and conditions of the Motion and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict, and the Debtors encourage interested parties to review such documents in their entirety. Parties interested in obtaining additional information concerning the Sale and/or the assets may make a written request to the Debtors' counsel at kurtzman@kurtzmansteady.com .

**PLEASE TAKE FURTHER NOTICE** that copies of any pleadings referenced above may be inspected in the Office of the Clerk of the Bankruptcy Court during normal business hours or downloaded from the Bankruptcy Court's website. Please note that prior registration with the PACER Service Center and payment of a fee may be required to access such documents through the Bankruptcy Court's website. Parties in interest may sign up for a PACER account by visiting the PACER website at http://pacer.psc.uscourts.gov or by calling (800) 676-6856.

Dated:  August 3, 2023          */s/ Jeffrey Kurtzman, Esquire*

                                    **KURTZMAN | STEADY, LLC**
555 City Avenue, Suite 480
Bala Cynwyd, PA 19004
Telephone:  (215) 839-1222
Facsimile:  (609) 482-8011
Email:  kurtzman@kurtzmansteady.com

*Attorneys for Debtors*

**<u>EXHIBIT 3</u>**

[Assumption Notice]

## UNITED STATES BANKRUPTCY COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 11 |
| | : |
| R.B. DWYER CO, INC. | : CASE NO. 5:23-bk-01420-MJC |
| IDEAL SLEEVES INTERNATIONAL, | : CASE NO. 5:23-bk-01418-MJC |
| LLC, | : CASE NO. 5:23-bk-01421-MJC |
| COLOR CRAFT FLEXIBLE PRINTING, | : |
| LLC | : |
| DEBTORS-IN-POSSESSION | : (Jointly Administered) |

---

### NOTICE OF CONTRACT PARTIES TO POTENTIALLY
### ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH THE DEBTORS AS SET FORTH IN <u>EXHIBIT A</u> ATTACHED HERETO.**

PLEASE TAKE NOTICE that on   August 3, 2023, the above-captioned debtors (the "Debtors") filed a motion for an order (the "Bidding Procedures Order")[1], authorizing, among other things (i) the Debtors to conduct an auction (the "Auction") to select the party to purchase all or substantially all of the Debtors' assets and (ii) procedures to determine Cure Amounts and deadlines for objections to such amounts and the potential assumption and assignment of Assigned Contracts (as defined below).  The Auction will be governed by the bidding procedures approved pursuant to the Bidding Procedures Order (which are attached to the Bidding Procedures Order as Exhibit 1, the "Bidding Procedures").

PLEASE TAKE FURTHER NOTICE that, pursuant to the Bidding Procedures and the terms of any Successful Bid, the Debtors may assume and assign to the Successful Bidder the contracts, leases or agreements listed on Exhibit A upon approval of the Sale (collectively, the "Assigned Contracts").  The Debtors have conducted a review of the Debtors' books and records and has determined that the cure amounts for unpaid monetary obligations under such Assigned Contracts are as set forth on Exhibit A attached hereto (the "Cure Amounts").

PLEASE TAKE FURTHER NOTICE that if you disagree with the proposed Cure Amounts, object to a proposed assignment of any Assigned Contract, or object to the ability of the Stalking Horse Purchaser or the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any order governing the administration of this chapter 11 case; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Amounts, state the correct cure

---

[1] All capitalized terms used otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order or the Debtors' motion to approve the Bidding Procedures Order [Doc. No. _____], as applicable.

amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served and **actually received no later than August 11, 2023 at 5:00 p.m. (prevailing Eastern Time)** (the "Cure Objection Deadline") by the Court and the following parties (collectively, the "Objection Notice Parties"): (i) Jeffrey Kurtzman, Esquire, Kurtzman | Steady, LLC, 555 City Avenue, Suite 480, Bala Cynwyd, PA 19004, kurtzman@kurtzmansteady.com; and (ii) all parties on the Rule 2002 notice list maintained by the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that if no objection to (a) the Cure Amount(s), (b) the proposed assignment and assumption of any Assigned Contract, or (c) adequate assurance of the Successful Bidder's ability to perform is filed by the Cure Objection Deadline or the Non-Stalking Horse Adequate Assurance Objection Deadline, as applicable, then (i) you will be deemed to have stipulated that the Cure Amounts as determined by the Debtors and as identified on Exhibit A hereto are correct, (ii) you may be forever barred, estopped, and enjoined from asserting any additional cure amount under the proposed Assigned Contract, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on the grounds that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of the Sale.

PLEASE TAKE FURTHER NOTICE that any objection to the proposed assumption and assignment of an Assigned Contract or related Cure Amounts in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date as may be fixed by the Court and/or agreed by the Debtor,s the applicable counterparty and the Successful Bidder.

PLEASE TAKE FURTHER NOTICE that copies of the pleadings referenced above may be inspected in the Office of the Clerk of the Bankruptcy Court during normal business hours or downloaded from the Bankruptcy Court's website Please note that prior registration with the PACER Service Center and payment of a fee may be required to access such documents through the Bankruptcy Court's website.

PLEASE TAKE FURTHER NOTICE that, notwithstanding anything herein, the mere listing of any Assigned Contract on Exhibit A hereto does not require or guarantee that such Assigned Contract will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Successful Bidder with respect to such Executory Contracts and/or Unexpired Leases are reserved. Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume executory contracts pursuant to section 365(a) of the Bankruptcy Code during the post-closing period.

Dated: August 3, 2023

*/s/ Jeffrey Kurtzman*
**KURTZMAN | STEADY, LLC**
555 City Avenue, Suite 480
Bala Cynwyd, PA 19004
Telephone: (215) 839-1222
Facsimile: (609) 482-8011
Email: kurtzman@kurtzmansteady.com

*Attorneys for Debtors*