## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| R.B. DWYER CO., INC., | : | Case No. 5:23-bk-01420 (MJC) |
| IDEAL SLEEVES INTERNATIONAL | : | 5:23-bk-01418 (MJC) |
| LLC, | : | 5:23-bk-01421 (MJC) |
| COLOR CRAFT FLEXIBLE PRINTING, | : | |
| LLC, | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | |

# DISCLOSURE STATEMENT FOR THE JOINT LIQUIDATING PLAN OF REORGANIZATION PROPOSED BY DEBTORS AND DEBTORS-IN-POSSESSION PURSUANT TO 11 U.S.C. §1125

Jeffrey Kurtzman, Esquire
**KURTZMAN | STEADY, LLC**
555 City Avenue, Suite 480
Bala Cynwyd, PA 19004
Telephone: (215) 839-1222
Email: kurtzman@kurtzmansteady.com

- and -

Frank Hoegen, Esquire
HOEGEN & ASSOCIATES, PC
152 S. Franklin Street #2
Wilkes-Barre, PA 18701
Telephone: (570) 820-3332
Email: fhoegen@hoegenlaw.com
Attorneys for Debtors and Debtors-in-Possession

Dated: September 1, 2023

THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE JOINT PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL, BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE. THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.

## THE DEBTORS ARE PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT TO HOLDERS OF CLAIMS AND INTERESTS FOR

PURPOSES OF SOLICITING VOTES TO ACCEPT OR REJECT THE JOINT LIQUIDATING PLAN OF REORGANIZATION PROPOSED BY THE DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (THE "PLAN" OR "JOINT PLAN"). NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY OTHER PURPOSE. BEFORE DECIDING WHETHER TO VOTE FOR OR AGAINST THE PLAN, EACH HOLDER ENTITLED TO VOTE SHOULD CAREFULLY CONSIDER ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN ARTICLE IX. HEREIN.

THE DEBTORS URGE EACH HOLDER OF A CLAIM TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX, OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE JOINT PLAN, AND THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. FURTHERMORE, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE JOINT PLAN.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE JOINT PLAN, CERTAIN STATUTORY PROVISIONS, AND CERTAIN ANTICIPATED EVENTS IN THE DEBTORS' CHAPTER 11 CASES. ALTHOUGH THE DEBTORS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH ANTICIPATED EVENTS. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE JOINT PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE AMENDED PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES. FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS' MANAGEMENT EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED. THE DEBTORS DO NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(b) AND IS NOT NECESSARILY PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER SIMILAR LAWS.

THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY, AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY

HAVE PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE JOINT PLAN.

IN PREPARING THIS DISCLOSURE STATEMENT, THE DEBTORS RELIED ON FINANCIAL DATA DERIVED FROM THE DEBTORS' BOOKS AND RECORDS AND ON VARIOUS ASSUMPTIONS REGARDING THE DEBTORS' BUSINESS. WHILE THE DEBTORS BELIEVE THAT SUCH FINANCIAL INFORMATION FAIRLY REFLECTS THE FINANCIAL CONDITION OF THE DEBTORS AS OF THE DATE HEREOF AND THAT THE ASSUMPTIONS REGARDING FUTURE EVENTS REFLECT REASONABLE BUSINESS JUDGMENTS, NO REPRESENTATIONS OR WARRANTIES ARE MADE AS TO THE ACCURACY OF THE FINANCIAL INFORMATION CONTAINED HEREIN OR ASSUMPTIONS REGARDING THE DEBTORS' BUSINESSES AND FUTURE RESULTS AND OPERATIONS. THE DEBTORS EXPRESSLY CAUTION READERS NOT TO PLACE UNDUE RELIANCE ON ANY FORWARD-LOOKING STATEMENTS CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER. THE DEBTORS MAY SEEK TO INVESTIGATE, FILE, AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE JOINT PLAN IRRESPECTIVE OF WHETHER THIS DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.

THE DEBTORS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE JOINT PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. THE DEBTORS HAVE NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

IF THE JOINT PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AND INTERESTS (INCLUDING THOSE HOLDERS OF CLAIMS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE JOINT PLAN, OR WHO ARE NOT ENTITLED TO VOTE ON THE JOINT PLAN) WILL BE BOUND BY THE TERMS OF THE JOINT PLAN AND THE RESTRUCTURING TRANSACTIONS CONTEMPLATED THEREBY.

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 5

II. PRELIMINARY STATEMENT ................................................................................. 5

III. OVERVIEW OF THE JOINT PLAN ......................................................................... 6

    A. Unclassified Claims ........................................................................................... 6

    B. Classified Claims and Interests ......................................................................... 6

    C. Acceptance or Rejection of Plan ........................................................................ 9

    D. Means of Effectuating the Plan ........................................................................ 10

    E. TREATMENT OF MISCELLANEOUS ITEMS ............................................ 10

    F. EFFECT OF CONFIRMATION OF PLAN ..................................................... 12

    G. Distributions ..................................................................................................... 13

IV. QUESTIONS AND ANSWERS REGARDING THIS DISCLOSURE ................... 14

STATEMENT AND THE PLAN ......................................................................................... 14

    A. What is Chapter 11? ......................................................................................... 14

    B. Why are the Debtors Sending me this Disclosure Statement? ......................... 14

    C. Am I entitled to vote on the Plan? ................................................................... 14

    D. What will I receive from the Debtor if I hold an Allowed Administrative Claim or a Priority Tax Claim? ................................................................................................ 15

    E. Are any regulatory approvals required to consummate the Plan? .................... 15

    F. What happens to my recovery if the Joint Plan is not confirmed or does not go effective? .. 15

    G. If the Joint Plan provides that I get a distribution, do I get it upon Confirmation or when the Joint Plan goes effective, and what is meant by "Confirmation," "Effective Date," and "Consummation?" ................................................................................................. 16

    H. What are the sources of consideration required to fund the Joint Plan? .......... 16

    I. Is there potential litigation related to the Joint Plan? ...................................... 16

    J. Discharge of Claims. ........................................................................................ 16

    K. Exculpation ....................................................................................................... 16

    L. Injunction .......................................................................................................... 17

    M. What is the deadline to vote on the Joint Plan? ............................................... 17

    N. How do I vote for or against the Plan? ............................................................. 17

    O. Why is the Bankruptcy Court holding a Confirmation Hearing? ..................... 17

    P. When is the Confirmation Hearing set to occur? ............................................. 17

    Q. What is the purpose of the Confirmation Hearing? ......................................... 18

    R. What is the effect of the Joint Plan on the Debtors' ongoing businesses? ....... 18

    S. Who do I contact if I have additional questions with respect to this Disclosure ................... 18

Statement or the Plan? ............................................................................................. **18**

T.    **Do the Debtors recommend voting in favor of the Joint Plan?** ............................... **18**

V.    **IMPORTANT INFORMATION ABOUT THIS DISCLOSURE STATEMENT** ................. 18

A.    **Additional Important Information** ........................................................................... **19**

VI.    **THE DEBTOR'S CORPORATE HISTORY, STRUCTURE AND BUSINESS OVERVIEW** 20

A.    **The Debtors** ............................................................................................................. **20**

VII.    **EVENTS LEADING TO THE CHAPTER 11 FILINGS** ......................................... 21

A.    **First Day Relief** ...................................................................................................... **21**

B.    **Claims Based on Rejection of Executory Contracts and Unexpired Leases** .......................... **22**

IX.    **RISK FACTORS** .................................................................................................. 22

A.    **Bankruptcy Law Considerations** ............................................................................ **22**

A.    **Holders of Claims Entitled to Vote on the Plan** ..................................................... **25**

B.    **Ballots Not Counted** ............................................................................................... **25**

X.    **CONFIRMATION OF THE PLAN** ...................................................................... 26

A.    **Requirements for Confirmation of the Joint Plan** ................................................. **26**

B.    **Best Interests of Creditors** ..................................................................................... **26**

C.    **Feasibility** ................................................................................................................ **26**

D.    **Acceptance by Impaired Classes** ........................................................................... **26**

E.    **Confirmation Without Acceptance by All Impaired Classes** ................................. **27**

XI.    **CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE JOINT PLAN** ......................................................................................................... 28

A.    **Introduction** ............................................................................................................ **28**

B.    **Certain U.S. Federal Income Tax Consequences to the Debtor and the Reorganized Debtor.** 29

XII.    **RECOMMENDATION** ......................................................................................... 31

# I.   INTRODUCTION

The above-captioned debtors (collectively, the "Debtors"), as debtors and debtors-in-possession, submit this disclosure statement (the "Disclosure Statement") pursuant to section 1125 of the Bankruptcy Code to holders of Claims against and Interests in the Debtors in connection with the solicitation of acceptances with respect to the Joint Chapter 11 Plan of Reorganization (the "Plan" or the "Joint Plan").[1]  A copy of the Joint Plan is attached hereto as Exhibit "A" and incorporated herein by reference.

# II.   PRELIMINARY STATEMENT

As of the Petition Date, the Debtors were engaged in the commercial packaging business. R.B. Dwyer Co., Inc. ("RBD") conducted its business from its headquarters facility located in Anaheim, California.  Color Craft Flexible Printing, LLC ("Color Craft") conducted its business from its headquarters facility located in Memphis, Tennessee.  Ideal Sleeves International, LLC ("Ideal Sleeves"), which was based in northeastern Pennsylvania, ceased substantially all of its operations prior to the Petition Date and consolidated its remaining assets and operations with those of Color Craft.

Since before the Petition Date, the Debtors were engaged in efforts to market their assets and businesses as a going concern.  In an effort to facilitate a sale, the Debtors commenced their Chapter 11 cases on June 26, 2023.

On August 24, 2023, the Bankruptcy Court entered an order authorizing the Debtors to sell substantially all of their assets to Formosa Flexible Packaging America, Inc. ("Formosa") free and clear of liens, claims, encumbrances and interests.  Pursuant to the asset purchase agreement entered into by and between the Debtors and Formosa, Formosa agreed to pay the sum of $4,650,000.00, subject to certain post-closing adjustments, and to assume the costs of curing defaults under those executory contracts and unexpired leases designated by Formosa for assumption and assignment by the Debtors.  Closing of the sale occurred on August 30. 2023.

The sale proceeds are allocated under the asset purchase agreement as follows:

a.   Forty-five (45%) percent to the estate of RBD;
b.   Forty-five (45%) percent to the estate of Color Craft; and
c.   Ten (10%) percent to the estate of Ideal Sleeves.

The Joint Plan establishes a framework for distributing the net proceeds of the sale transaction to the holders of Allowed Claims against the Debtors in the order of their respective priorities under the Bankruptcy Code and avoids the cost and uncertainty resulting from a conversion of the Debtors' Chapter 11 cases to cases under Chapter 7 or the dismissal of such cases.

---

[1]  Capitalized terms used but not otherwise defined in this Disclosure Statement will have the meaning ascribed to such terms in the Plan. **The summary of the Joint Plan provided herein is qualified in its entirety by reference to the Joint Plan. In the case of any inconsistency between this Disclosure Statement and the Joint Plan, the Joint Plan will govern**.

## III.  OVERVIEW OF THE JOINT PLAN

The Joint Plan provides for the orderly liquidation of the Debtors' assets through distributions to the holders of Allowed Claims.  To the extent that the value of the assets to be distributed under the Joint Plan is insufficient to pay the holders of Allowed Claims in each Class in full, distributions will be made ratably to the holders of such Claims.

Because the Debtors have not been substantively consolidated (and will not be substantively consolidated pursuant to the Joint Plan), distributions will be calculated and made on the basis of Allowed Claims against each of the Debtors.

### A.  Unclassified Claims

Certain types of clams are not placed into voting classes and are instead unclassified.  Such claims are not impaired and do not vote on the Joint Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtors have not classified the following:

#### 1.  Administrative Expenses and Professional Fees

Administrative expenses are Claims for costs or expenses of administering the Chapter 11 Cases which are allowed under §503(b) of the Bankruptcy Code.  Fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee were also incurred during the Chapter 11 Cases.  The Bankruptcy Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

Bankruptcy Court Approval of Professional Compensation and Expenses Required:  The Bankruptcy Court must approve all professional compensation and expenses.  Each Professional requesting compensation in the Chapter 112 Cases pursuant to §§327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than ninety (90) days after the Confirmation Date.  Nothing herein shall prohibit Professionals from requesting interim compensation during the course of this case pending Confirmation of this Joint Plan.  No motion or application is required to fix fees payable to the Clerk's Office of the Office of the United States Trustee, as those fees are determined by statute.

#### 2.  Priority Tax Claims

Priority Tax Claims are certain unsecured income, employment and other taxes described by §507(a)(8) of the Bankruptcy Code.  The Bankruptcy Code requires, and the Joint Plan therefore provides, that each holder of a §507(a)(8) Priority Tax Claim receives the present value of such clam in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax.

### B.  Classified Claims and Interests

#### 1.  Classes of Secured Claims, Unsecured Claims and Interests.

The following represent all Classes containing the Debtors' secured pre-petition Clams and their

treatment under the Joint Plan:

| CLASS # | DESCRIPTION | INSIDERS Y/N | IMPAIRED Y/N | TREATMENT |
|---|---|---|---|---|
| 1 | Pathward, National Association | N | Y | To the extent not previously satisfied, the Allowed Secured Claim of Pathward, National Association shall be paid from the proceeds resulting from the sale of the Debtors' assets in the order of its applicable lien priority. |
| 2 | U.S. Small Business Administration | N | N | To the extent not previously satisfied, the Allowed Secured Claim of the U.S. Small Business Administration will be paid from the proceeds resulting from the sale of the Debtors' assets in the order of its lien priority |
| 3 | Allowed Other Secured Claims | N | Y | To the extent not previously satisfied, the Allowed Secured Claims of secured creditors other than Pathward, National Association and the U.S. Small Business Administration shall be paid from the sale of the applicable Debtor's assets in the order of their applicable lien priority. |
| 4 | Allowed Priority Claims | N | N | Claims entitled to priority under §507 of the Bankruptcy Code, excluding Administrative Claims and Priority Tax Claims, will be paid in full on or as soon as reasonably practicable after the Effective Date. |
| 5 | Allowed Priority Tax Claims | N | N | Priority Tax Claims will be paid in full on or as soon as reasonably practicable after the Effective Date. |
| 6A | Allowed General Unsecured Claims Against R.B. Dwyer Co., Inc. | N | Y | Allowed Unsecured Claims against R.B. Dwyer Co., Inc. will be paid pro rata from funds remaining in the R.B. Dwyer Co., Inc. estate after distribution on account of senior Classes. |

| | | | | |
|---|---|---|---|---|
| 6B \ | Allowed General Unsecured Claims Against Color Craft Flexible Printing, LLC | N | Y | Allowed Unsecured Claims against Color Craft Flexible Printing, LLC will be paid pro rata from funds remaining in the Color Craft Flexible Printing, LLC estate after distribution on account of senior Classes. |
| 6C | Allowed General Unsecured Claims Against Ideal Sleeves International, LLC | N | Y | Allowed Unsecured Claims against Ideal Sleeves International, LLC will be paid pro rata from funds remaining in the Ideal Sleeves International estate after distribution on account of senior Classes. |
| 7 | Equity Interest Holders | Y | Y | Equity Interest Holders in the Debtors will neither receive nor retain any value on account of such Equity Interests, which shall be canceled and extinguished as of the Effective Date. |

{8035681: }8

2. __Priority Non-Tax Claims__

Certain priority non-tax claims that are referred to in §§507(a)(3),(4),(5),(6), and (7) of the Bankruptcy Code are entitled to priority treatment. The Debtors submit that no such Claims existed as of the Petition Date.

3. __Other Secured Claims__

With respect to the treatment of Other Secured Claims, the Joint Plan provides as follows:

(a)     Classification: Class 3 consists of Allowed Secured Claims which are not otherwise classified hereunder.

(b)     Treatment: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release and discharge of such Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive Cash totaling 100% of the value of such Other Secured Claim determined in accordance with section 506(a) of the Bankruptcy Code. Deficiency Claims, if any, shall be treated as General Unsecured Claims against the applicable Debtor.

(c)     Voting: The Holders of Class 3 Claims are Unmpaired and not entitled to vote to accept or reject the Plan.

4. __Classes of General Unsecured Claims__

General Unsecured Claims against each Debtor are unsecured Claims not entitled to priority under §507(a) of the Bankruptcy Code or are deficiency portions of Secured Claims as to which the value of the applicable collateral security is less than the amount of the Claim. These Claims are to be classified and treated in Classes 6A, 6B and 6C as set forth above.

5. __Class of Equity Interest Holders__

As set forth above, Equity Interest Holders in the Debtors will neither receive nor retain any value on account of their Equity Interests, which will be canceled and extinguished as of the Effective Date. Equity Security Holders are deemed to reject the Joint Plan.

C.     __Acceptance or Rejection of Joint Plan__

Each impaired Class of Creditors with Claims against a Debtor's estate shall be entitled to vote separately to accept or reject the Plan. A Class of Creditors shall have accepted the Joint Plan if the Joint Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half in number of holders of the Allowed Claims of such Class that have accepted or rejected the Plan. In the event that any Impaired Class of Creditors or Equity Interest Holders shall fail to

accept the Joint Plan in accordance with §1129(a) of the Bankruptcy Code, the Debtors reserve the right to request that the Bankruptcy Court confirm the Plan in accordance with the "cramdown" provisions of §1129(b) of the Bankruptcy Code.

**D.     Means of Effectuating the Joint Plan**

　　1.     **Sale of Assets.**

　　　　(a)     <u>Asset Sale</u>.  The Plan will be funded by the proceeds resulting from the sale of substantially all of the Debtors' assets, which was approved by the Bankruptcy Court on August 25, 2023.  The Debtors engaged Jack R. Farris to market and sell their assets.  As a result of that marketing effort, the Debtors entered into an asset purchase agreement with Formosa for a gross purchase price of $4,650,000.00, subject to certain post-closing adjustments.  The Formosa asset sale closed on August 30, 2023.  As a result, net of expenses paid at closing, the Debtors are holding the sale proceeds in the attorney trust account of Hoegen & Associates, PC, the Debtors' co-counsel,  pending further order of the Bankruptcy Court.

　　　　(b)     <u>Sale Fee and Clear of Liens</u>.  The sale or sales of the Debtors' assets has been effectuated free and clear of all liens, claims, encumbrances and interests of any kind, with such liens, claims, encumbrances and interests to attach the proceeds resulting from the sale of such assets in the order of their respective priorities pursuant to §§ 363(f), 1123(a)(5)(D), 1129 and 1141(c) of the Bankruptcy  Code.

　　　　(c)     <u>Transfer Tax Exemption</u>.  The sale of any of the Debtors' assets not previously sold to Formosa or otherwise conveyed pursuant to a prior order of the Bankruptcy Court shall be effectuated under and pursuant to the Plan.  Accordingly, the sale of any such assets shall be free and clear of any and all state, local or other transfer, stamp and similar taxes pursuant to §1146(a) of the Bankruptcy Code.

　　2.     **Post-Confirmation Management**

　　The Debtors' pre-Confirmation chief executive officer, James Dwyer, shall continue to manage the Debtors post-confirmation.  The Debtors' pre-confirmation controller, Daniel Verdugo, has agreed to continue to render services to the Debtors on an as-needed basis.

　　3.     **Disbursing Agent**

　　The Joint Plan provides that Frank Hoegen, Esquire shall act as the Disbursing Agent for the purpose of making all distributions provided for under the Plan.  The Disbursing Agent shall not be compensated other than by means of compensation due and payable in his capacity as co-counsel to the Debtors.

**E.     TREATMENT OF MISCELLANEOUS ITEMS**

　　**1.     Executory Contracts and Unexpired Leases**

The Joint Plan provides that any executory contract or unexpired lease not assumed or subject to a motion to assume (or to assume and assign) as of the Confirmation Date shall be deemed rejected as of the Confirmation Date pursuant to §§365 and 1123 of the Bankruptcy Code.

## THE BAR DATE FOR FILING A PROOF OF CLAIM OR INTEREST

All proofs of claim or interest, to the extent not scheduled in the Debtors' respective schedules of assets and liabilities or which are scheduled in amounts and/or having priorities other than are consistent with a Claimant's books and records, must be filed in accordance with the Order of the Bankruptcy Court entered on July 11, 2023 establishing bar dates with respect to proofs of claim against the Debtors. Any such claims, proofs of which are not filed timely, will be barred from sharing in or otherwise receiving any distribution under the Joint Plan.

### 2.    Regulatory Commission Approval

The Debtors are not subject to governmental or regulatory oversight.

### 3.    Retention of Jurisdiction

The Joint Plan provides that the Bankruptcy Court shall retain jurisdiction of the Chapter 11 Cases pursuant to the provisions of Chapter 11 of the Bankruptcy Code pending the final allowance or disallowance of all Claims affected by the Plan, and to enter such orders as are necessary or appropriate to carry out the provisions of this Plan.

In addition, the Bankruptcy Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under §1142(a) and (b), of the Bankruptcy Code. If the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the Debtors or the reorganized Debtors (as the case may be) elect to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

### 4.    Procedures for Resolving Contested Claims

Objections to Claims and Equity Interests, except for those Claims more specifically deemed Allowed in the Joint Plan, may be filed by the reorganized Debtors or any party in interest up to and including ninety (90) days following the entry of the Confirmation Order. With respect to disputed Claims or Equity Interests, the Disbursing Agent shall hold in a separate interest-bearing reserve account such funds as would be necessary in order to make the required distribution on the Claim or interest in the Debtors' respective schedules of assets and liabilities or a filed proof(s) of claim.

### 5.    Notices under the Plan

All notices, requests or demands with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested, and by electronic mail, and if sent to the Debtors' counsel, addressed to:

> Jeffrey Kurtzman, Esquire
> **KURTZMAN | STEADY, LLC**
> 555 City Avenue, Suite 480
> Bala Cynwyd, PA 19147
> Email: kurtzman@kurtzmansteady.com

### F. EFFECT OF CONFIRMATION OF PLAN

#### 1. Discharge

Because the Joint Plan is a liquidating plan, it does not provide that the Debtors will be discharged of liability for Debts incurred before Confirmation. If Confirmation does not occur or if, after Confirmation occurs, the Debtors elect to terminate the Plan, the Plan shall be deemed null and void. In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims against the Debtors or their estates or any other persons, or to prejudice in any manner the rights of the Debtor or its estate or any person in any further proceeding involving the Debtors or their estate. Upon Confirmation, the provisions of the Plan shall be binding upon Debtors, all Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity Interest Holders are impaired or whether such parties accept the Plan.

#### 2. Revesting of Property in the Debtors

The Joint Plan provides that, except as expressly otherwise provided in the Plan, Confirmation shall operate to revest all of the assets of the estates in the Debtors.

#### 3. Modification of Plan

The Joint Plan provides that the Debtors may modify the Joint Plan at any time before Confirmation. However, the Bankruptcy Court may require a new disclosure statement or revoting on the Plan if such modification occurs before Confirmation.

The Debtors may also seek to modify the Joint Plan at any time after Confirmation so long as the Joint Plan has not been substantially consummated and the Bankruptcy Court authorizes the proposed modification after notice and a hearing.

#### 4. Post-Confirmation Conversion or Dismissal

A Creditor or party in interest may bring a motion to convert or dismiss the Chapter 11 Casea under §1112(b) of the Bankruptcy Code after the Joint Plan is confirmed if there is a default

in performing any material obligation under the Plan. If the Bankruptcy Court converts the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code after the Joint Plan is confirmed, all assets constituting property of the Debtors' estates and which have not been disbursed pursuant to the Joint Plan will revest in the Chapter 7 estates, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Bankruptcy Court during the Chapter 11 Cases.

### 5.     Post-Confirmation Quarterly Fees

Quarterly fees pursuant to 28 U.S.C. §1930(a)(6) shall continue to be due and payable to the Office of the United States trustee post-confirmation until such time as the Chapter 11 Cases are converted, dismissed or closed pursuant to a final decree.

### 6.     Post-Effective Date Professional Fees

From and after the Effective Date, reasonable fees and expenses incurred by the Debtors to Professionals in implementing this Joint Plan shall be paid in the ordinary course without the requirement of Bankruptcy Court approval.

### 7.     Severability

If any provision of the Joint Plan is determined to be unenforceable, such determination will in no way limit or affect the enforceability and operative effect of any other provision of the Joint Plan.

### 8.     Binding Effect

The rights and obligation of any entity whose rights or interests is affected by the Joint Plan will be binding upon and will inure to the benefit of the successors and assigns of such entity.

### 9.     Captions

The headings contained in this Disclosure Statement are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### G.     Distributions

The Joint Plan contemplates the following distributions to Holders of Allowed Claims:

- Allowed Priority Tax Claims are Unimpaired. Allowed Secured Claims are impaired and, to the extent not previously satisfied in accordance with an order of the Bankruptcy Court, will be fully paid on or as soon as reasonably practicable following the Effective Date or as otherwise agreed between the claimant and the Debtors.

- General Unsecured Claims will receive a distribution based on available funds in the applicable estate, pro rata, in cash as soon as reasonably practicable following the Effective Date. There can be no assurance that distributions to these Classes will be available after distributions on account of Allowed Claims having priority in relation to General Unsecured Claims.

- Other Secured Claims will receive a distribution to the extent of proceeds resulting from the sale of their collateral, determined in accordance with section 506 of the Bankruptcy Code. To the extent that the collateral of the holder of an Other Secured Claim has a value less than the amount of such Claim, the deficiency portion will be treated as a General Unsecured Claim for purposes of the Joint Plan.

## IV. QUESTIONS AND ANSWERS REGARDING THIS DISCLOSURE STATEMENT AND THE PLAN

### A. What is Chapter 11?

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. In addition to permitting debtor rehabilitation, chapter 11 promotes equality of treatment for creditors and similarly situated equity interest holders, subject to the priority of distributions prescribed by the Bankruptcy Code.

The commencement of a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the date the chapter 11 case is commenced. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

Consummating a plan is the principal objective of a chapter 11 case. A bankruptcy court's confirmation of a plan binds the debtor, any person acquiring property under the plan, any creditor or equity interest holder of the debtor, and any other entity as may be ordered by the bankruptcy court. Subject to certain limited exceptions, the order issued by a bankruptcy court confirming a plan provides for the treatment of the debtor's liabilities in accordance with the terms of the confirmed plan.

### B. Why are the Debtors Sending me this Disclosure Statement?

The Debtors are seeking to obtain Bankruptcy Court approval of the Joint Plan. Before soliciting acceptances of the Joint Plan, section 1125 of the Bankruptcy Code requires the Debtors to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the Joint Plan. This Disclosure Statement is being submitted in accordance with these requirements.

### C. Am I entitled to vote on the Plan?

Your ability to vote on, and your distribution under, the Joint Plan, if any, depends on what type of Claim or Interest you hold. Each category of holders of Claims or Interests, as set forth in Article III of the Joint Plan pursuant to section 1122(a) of the Bankruptcy Code, is referred to as a "Class." Each Class's respective voting status is set forth in this Disclosure Statement.

**What will I receive from the Debtor if the Plan is consummated?**

The Joint Plan provides for distributions of available cash in accordance with the priority scheme established by the Bankruptcy Code. The Debtors anticipate that holders of Allowed Secured Claims whose Claims are fully secured within the meaning of section 506 of the Bankruptcy Code will be paid in full. The Debtors anticipate that Allowed Administrative Claims and Allowed Priority Claims will similarly be paid in full. While the Debtors estimate that funds will be available to the holders of Allowed General Unsecured Claims, they cannot predict with certainty the percentage distribution, which depends upon, among other factors, the amount of cash available for distribution (including the proceeds of avoidance actions, if any). Your entitlement to receive distributions under the Joint Plan depends upon the ability of the Debtors to obtain Confirmation and meet the conditions necessary to consummate the Joint Plan, as well as the availability of funds sufficient to satisfy the Allowed Claims of senior Classes in full.

**D.      What will I receive from the Debtor if I hold an Allowed Administrative Claim or a Priority Tax Claim?**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in the Joint Plan. The Debtors anticipate that Allowed Administrative Claims and Allowed Priority Tax Claims will be fully satisfied on or immediately following the Effective Date.

**E.      Are any regulatory approvals required to consummate the Plan?**

No. There are no known regulatory approvals that are required to consummate the Joint Plan.

**F.      What happens to my recovery if the Joint Plan is not confirmed or does not go effective?**

In the event that the Joint Plan is not confirmed or does not become effective, the Chapter 11 Cases will likely be converted to cases under Chapter 7. In that event, the Debtors anticipate that funds otherwise available to Creditors will be diminished by Chapter 7 administrative expenses. For a more detailed description of the consequences of an extended chapter 11 case, or of a liquidation scenario, see "Confirmation of the Plan—Best Interests of Creditors/Liquidation Analysis," below.

**G.    If the Joint Plan provides that I get a distribution, do I get it upon Confirmation or when the Joint Plan goes effective, and what is meant by "Confirmation," "Effective Date," and "Consummation?"**

"Confirmation" of the Joint Plan refers to approval of the Joint Plan by the Bankruptcy Court. Confirmation of the Joint Plan does not guarantee that you will receive the distribution indicated under the Joint Plan. After Confirmation of the Joint Plan by the Bankruptcy Court, the Confirmation Order must become final and unappealable in order for the Effective Date to occur. The Joint Plan provides that the Effective Date will occur on the Business Day on which the Confirmation Order becomes final and unappealable, which will be a Business Day at least fourteen days from the date on which the Confirmation Order is entered.

**H.    What are the sources of consideration required to fund the Joint Plan?**

The Plan will be funded by cash on hand, including sale proceeds and the proceeds of Chapter 5 claims and causes of action, if any.

**I.    Is there potential litigation related to the Joint Plan?**

Parties in interest may object to the approval of this Disclosure Statement and may object to Confirmation of the Joint Plan as well, which objections potentially could give rise to litigation. The Joint Plan contemplates that, following Confirmation, the Debtors may commence and prosecute claims and causes of action pursuant to Chapter 5 of the Bankruptcy Code, including to avoid and recover preferential transfers and fraudulent conveyances, if any.

In the event that it becomes necessary to confirm the Joint Plan over the objection of certain creditors or rejecting Classes of Claims, the Debtors may seek confirmation of the Plan notwithstanding such objections or rejection. With respect to rejecting Classes of Claims, the Bankruptcy Court may confirm the Joint Plan pursuant to the "cramdown" provisions of the Bankruptcy Code, which allow the Bankruptcy Court to confirm a plan that has been rejected by an impaired Class if it determines that the Joint Plan satisfies section 1129(b) of the Bankruptcy Code.

**J.    Discharge of Claims.**

The Joint Plan is a liquidating plan. As a result, Claims against the Debtors are not being discharged in accordance with section 1141(d)(3) of the Bankruptcy Code.

**K.    Exculpation**

UPON AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE DEBTORS WILL BE DEEMED TO HAVE SOLICITED ACCEPTANCES OF THE JOINT PLAN IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, INCLUDING SECTION 1125(e) OF THE BANKRUPTCY CODE.

**L.** <u>Injunction</u>

EXCEPT AS OTHERWISE PROVIDED IN THE JOINT PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE JOINT PLAN OR ARE SUBJECT TO EXCULPATION PURSUANT TO THE JOINT PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY ACTION OR OTHER PROCEEDING, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS OR THE REORGANIZED DEBTORS.

**M.** <u>What is the deadline to vote on the Joint Plan?</u>

The Voting Deadline is [_____, 2023] at 4:00 p.m. (prevailing Eastern Time).

**N.** <u>How do I vote for or against the Plan?</u>

Detailed instructions regarding how to vote on the Joint Plan are contained on the Ballots distributed to holders of Claims that are entitled to vote on the Joint Plan. For your vote to be counted, your ballot must be completed and signed so that it is actually received by [_____, 2023] at 5:00 p.m. (prevailing Eastern Time) at the following address:

> Jeffrey Kurtzman, Esquire
> **KURTZMAN | STEADY, LLC**
> 101 N. Washington Avenue, Suite 4A
> Margate, NJ 08402
> or by electronic mail at <u>kurtzman@kurtzmansteady.com</u>

**O.** <u>Why is the Bankruptcy Court holding a Confirmation Hearing?</u>

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court to hold a hearing on confirmation of the Plan and recognizes that any party in interest may object to Confirmation of the Joint Plan.

**P.** <u>When is the Confirmation Hearing set to occur?</u>

The Bankruptcy Court has scheduled the Confirmation Hearing on [   ] at [   ] (prevailing Eastern Time).  The Confirmation Hearing may be adjourned from time to time without further notice.

Objections to Confirmation of the Plan must be filed and served on the Debtors, and certain other parties, by no later than [_____, 2023) (prevailing Eastern Time).

**Q. What is the purpose of the Confirmation Hearing?**

The confirmation of a plan of reorganization by a bankruptcy court binds the debtor, any issuer of securities under a plan of reorganization, any person acquiring property under a plan of reorganization, any creditor or equity interest holder of a debtor, and any other person or entity as may be ordered by the bankruptcy court in accordance with the applicable provisions of the Bankruptcy Code. Subject to certain limited exceptions, the order issued by the bankruptcy court confirming a plan of reorganization discharges a debtor from any debt that arose before the confirmation of such plan of reorganization and provides for the treatment of such debt in accordance with the terms of the confirmed plan of reorganization unless the plan is a liquidating plan.

**R. What is the effect of the Joint Plan on the Debtors' ongoing businesses?**

The Debtors are liquidating their remaining assets pursuant to the Joint Plan. As a result, the Debtors will not conduct future business operations other than the winddown activities and the distributions contemplated by the Joint Plan.

**S. Who do I contact if I have additional questions with respect to this Disclosure Statement or the Plan?**

If you have any questions regarding this Disclosure Statement or the Plan, please contact the Debtors' counsel:

| By regular, hand delivery, or overnight mail: | By electronic mail at: | By telephone at: |
|---|---|---|
| Jeffrey Kurtzman, Esquire **KURTZMAN \| STEADY, LLC** 101 N. Washington Avenue, Suite 4A Margate, NJ 08402 | kurtzman@kurtzmansteady.com | (215) 839-1222 |

Copies of the Joint Plan, this Disclosure Statement, and any other publicly filed documents in the Chapter 11 Cases, are available upon written request to the Debtors' counsel or the Bankruptcy Court.

**T. Do the Debtors recommend voting in favor of the Joint Plan?**

Yes. The Debtors believe the Joint Plan provides for a substantially larger distribution to the Debtors' creditors than would otherwise result from any other available alternative, including liquidation under Chapter 7 of the Bankruptcy Code. The Debtors believe the Joint Plan is in the best interest of all holders of Claims and that other alternatives fail to realize or recognize the value inherent under the Joint Plan.

**V. IMPORTANT INFORMATION ABOUT THIS DISCLOSURE STATEMENT**

## A.    Additional Important Information

The confirmation and effectiveness of the Joint Plan are subject to certain material conditions precedent described herein and set forth in the Joint Plan. There is no assurance that the Joint Plan will be confirmed, or if confirmed, that the conditions required to be satisfied for the Joint Plan to go effective will be satisfied (or waived).

You are encouraged to read this Disclosure Statement in its entirety, including the section entitled "Risk Factors" and the Plan before submitting your ballot to vote on the Plan.

**The Bankruptcy Court's approval of this Disclosure Statement does not constitute a guarantee by the Bankruptcy Court of the accuracy or completeness of the information contained herein or an endorsement by the Bankruptcy Court of the merits of the Joint Plan.**

Summaries of the Joint Plan and statements made in this Disclosure Statement are qualified in their entirety by reference to the Joint Plan. The summaries of the financial information and the documents annexed to this Disclosure Statement or otherwise incorporated herein by reference are qualified in their entirety by reference to those documents. The statements contained in this Disclosure Statement are made only as of the date of this Disclosure Statement, and there is no assurance that the statements contained herein will be correct at any time after such date. Except as otherwise provided in the Joint Plan or in accordance with applicable law, the Debtor is under no duty to update or supplement this Disclosure Statement.

The information contained in this Disclosure Statement is included for purposes of soliciting acceptances to, and Confirmation of, the Plan and may not be relied on for any other purpose. In the event of any inconsistency between the Disclosure Statement and the Plan, the relevant provisions of the Plan will govern.

This Disclosure Statement has not been approved or disapproved by any federal, state, local or foreign regulatory agency.

The Debtors have sought to ensure the accuracy of the financial information provided in this Disclosure Statement; however, the financial information contained in this Disclosure Statement or incorporated herein by reference has not been, and will not be, audited or reviewed by the Debtors' independent auditors unless explicitly provided otherwise.

The Debtors make statements in this Disclosure Statement that are considered forward-looking statements under federal securities laws. The Debtors consider all statements regarding anticipated or future matters, to be forward-looking statements. Forward-looking statements may include statements about the Debtors':

- winddown strategy;
- financial condition, revenues, cash flows, and expenses;

- success of the Debtors' avoidance action program and the recoveries, if any, which will result therefrom; and
- amount of cash available for distribution on account of General Unsecured Claims.

Statements concerning these and other matters are not guarantees of the Reorganized Debtors' future performance. There are risks, uncertainties, and other important factors that could cause the Debtors' actual performance or achievements to be different from those it may project, and the Debtors undertake no obligation to update the projections made herein.

## VI. THE DEBTORS' CORPORATE HISTORY, STRUCTURE AND BUSINESS OVERVIEW

### A. **The Debtors**

History

In 1988, Mr. Ray Dwyer founded RBD. to serve as a manufacturer's representation firm selling flexible packaging materials, rigid plastic PET containers, and other plastic packaging commodities for commission to printers, converters, and end users primarily within the food industry. Mr. Dwyer's prior experience of over 30 years in flexible packaging provided the foundation for the company.

In June, 1990, James Dwyer joined the company as Vice President of sales and marketing. Shortly after joining the company, James Dwyer changed the company focus away from solely relying on commission income to importing heat shrinkable tamper evident band and labels from Asia as well as starting a manufacturing and converting operation in the U.S. Also, during this period, RBD opened six public warehouse locations throughout the U.S. in order to become a national supplier. By 1998, revenue had increased to just over $4 million.

In 2007, the parent company of RBD. purchased Ideal Sleeves International located in Wilkes Barre, PA. Ideal Sleeves served as the northeast distribution hub for preformed shrink bands, as well as our first shrink label printing facility. Revenue at Ideal has steadily increased form under $1 million in 2007 to $4.5 million in 2022. Ideal Sleeves ceased operations shortly before the Petition Date and was consolidated with Color Craft.

In 2009, RBD purchased its first Hewlett Packard ("HP") Indigo 6000 Digital Printing Press, becoming one of the first companies in North America to use digital technology chiefly for shrink sleeves. Since then through the date of the Formosa sale, RBD operated five HP Indigo presses of various types across North America. As of the Petition Date, RBD was one of HP's larges digital label printers by volume.

In 2017, RBD. acquired Color Craft located in Memphis, TN. Color Craft Flexible Printing provided additional digital and flexographic printing capacity to serve the Midwest. Color Craft revenue grew to just over $4 million in 2022.

In 2007, the parent entity purchased the assets of Integrity Seal International located in Wilkes-Barre, PA and renamed the company Ideal Sleeves. Ideal Sleeves was acquired to provide an East Coast manufacturing/distribution presence near most major competitors and to diversify into the printed heat shrinkable sleeve market.

Ideal Sleeves International was classified in Standard Industry Classification, SIC Code 2671 – *Packaging, Paper, and Plastic Films, Coated and Laminated* and NAICS Code 322221 – *Coated and Laminated Packaging Paper and Plastic Film Manufacturing.*

Ideal Sleeves operated from an 85,000 square foot leased facility which housed corporate offices, warehouse/distribution, and manufacturing. Ideal Sleeves also maintained a 2,000 square foot leased customer service/sales office in Melville, NY.

On January 27, 2017, the parent entity purchased the assets of Color Craft for the purpose of increasing printed label capacity in order to service the increased demand of the can labeling divisions. Color Craft's Memphis location afforded access to the southeast and upper midwest markets, which featured growing industrial bases.

Color Craft is classified in Standard Industry Classification, SIC Code 2671 – *Packaging, Paper, and Plastic Films, Coated and Laminated* and NAICS Code 322221 – *Coated and Laminated Packaging Paper and Plastic Film Manufacturing*

Color Craft operated from a 40,000 square foot wholly owned facility which housed corporate offices, warehouse/distribution, and manufacturing. The Color facility is owned by an affiliate of James Dwyer and his spouse.

Both the RBD and Color Craft leases were rejected on August 31, 2023.

## VII. EVENTS LEADING TO THE CHAPTER 11 FILINGS

The primary factor affecting the Debtors' decision to commence the Chapter 11 Cases was liquidity shortfalls resulting from decreasing inventory advance rates made available by their primary lender, Pathward, National Association. The Chapter 11 Cases were commenced in order to permit the Debtors to market their assets as part of a sale process in which a buyer could obtain title free and clear of liens, claims, encumbrances and interests under section 363 of the Bankruptcy Code.

## VIII. SUMMARY OF THE DEBTORS AND EVENTS IN THE CHAPTER 11 CASES

### A. First Day Relief

On the Petition Date, the Debtors filed several motions (the "First Day Motions") designed to facilitate the efficient administration of the Chapter 11 Cases, including an

emergency motion to authorize the Debtors' use of cash collateral, an emergency motion to determine adequate protection to utility providers, a motion authorizing the joint administration of the Debtors' respective Chapter 11 cases and for related relief.

Thereafter, the Debtors negotiated a letter of intent and, subsequently, an asset purchase agreement with Formosa and filed an emergency motion to approve the Formosa sale transaction, together with proposed bidding and sale procedures, on August 3, 2023. The Bankruptcy Court approved the proposed bidding and sale procedures on August 10, 2023 and scheduled a sale hearing on August 24, 2023.

The Bankruptcy Court entered an order approving the sale motion on August 25, 2023. The Formosa sale transaction closed on August 30, 2023.

## B. <u>Claims Based on Rejection of Executory Contracts and Unexpired Leases</u>

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases pursuant to the Joint Plan or otherwise must be filed with the Bankruptcy Court within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. **Any Proofs of Claim arising from the rejection or repudiation of the Debtors' Executory Contracts and Unexpired Leases that are not timely filed shall be deemed disallowed.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases shall constitute General Unsecured Claims and shall be treated in accordance with the Plan.

## IX. RISK FACTORS

Holders of Claims should read and consider carefully the risk factors set forth below before voting to accept or reject the Joint Plan. Although there are many risk factors discussed below, these factors should not be regarded as constituting the only risks present in connection with the Debtors' businesses or the Joint Plan and its implementation.

The Joint Plan is a liquidating plan, which contemplates that cash available in the Debtors' respective estates will be distributed in the order of priority set forth in the Bankruptcy Code. If the Joint Plan is not confirmed, the Debtors' Chapter 11 cases are subject to the risk that the cases will be converted to cases under Chapter 7 of the Bankruptcy Code or dismissed. If this occurs, distributions will be impacted by the costs and delays associated with proceedings under Chapter 7 of the Bankruptcy Code, including the commissions payable to a Chapter 7 trustee and the administrative expenses incurred by a trustee's professionals. If the cases are dismissed, creditors' rights to commence actions against the Debtors in courts of competent jurisdiction would be preserved; however, there would be no assurance that the equality of distribution contemplated by the applicable provisions of the Bankruptcy Code would be preserved based on a "race to the courthouse" by creditors electing to commence litigation.

## A. <u>Bankruptcy Law Considerations</u>

The occurrence or non-occurrence of any or all of the following contingencies, and any others, could affect distributions available to holders of Allowed Claims under the Joint Plan, but will not necessarily affect the validity of the vote of the Impaired Classes to accept or reject the Joint Plan or necessarily require a re-solicitation of the votes of holders of Claims in such Impaired Classes.

1.      Parties in Interest May Object to the Plan's Classification of Claims and Interests

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity, interest is substantially similar to the other claims or equity interests in such class. The Debtors believe that the classification of the Claims and Interests under the Joint Plan complies with the requirements set forth in the Bankruptcy Code because the Debtor created Classes of Claims and Interests that are substantially similar to the other Claims or Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

2.      The Conditions Precedent to the Effective Date of the Joint Plan May Not Occur

As more fully set forth in the Joint Plan, the Effective Date is subject to certain conditions precedent. If such conditions precedent are not met or waived, the Effective Date will not take place.

3.      The Debtors May Fail to Satisfy Vote Requirements

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Joint Plan, the Debtors intend to seek, as promptly as practicable thereafter, Confirmation of the Joint Plan. In the event that sufficient votes are not received, the Debtors may seek to confirm an alternative chapter 11 plan. There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the holders of Allowed Claims as those proposed in the Joint Plan.

4.      The Debtors May Not Be Able to Obtain Confirmation of the Joint Plan

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, and requires, among other things, a finding by the Bankruptcy Court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of distributions to non-accepting holders of claims and equity interests within a particular class under such plan will not be less than the value of distributions such holders would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Joint Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Joint Plan. A non-accepting holder of an Allowed Claim

might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determines that this Disclosure Statement, the balloting procedures, and voting results are appropriate, the Bankruptcy Court could still decline to confirm the Joint Plan if it finds that any of the statutory requirements for Confirmation are not met. If a chapter 11 plan of reorganization is not confirmed by the Bankruptcy Court, it is likely that the Debtors will be unable to reorganize their businesses.

The effectiveness of the Joint Plan is also subject to certain conditions as described in the Joint Plan. If the Joint Plan is not confirmed, it is unclear what distributions, if any, holders of Allowed Claims will receive on account of such Allowed Claims.

5.      Nonconsensual Confirmation

In the event that any impaired class of claims or interests does not accept the Joint Plan, the Bankruptcy Court may nevertheless confirm a plan at the Debtors' request if at least one impaired class (as defined under section 1124 of the Bankruptcy Code) has accepted the Joint Plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not accepted the Joint Plan, the Bankruptcy Court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired class(es). The Debtors believe that the Joint Plan satisfies these requirements, and the Debtors may request such nonconsensual Confirmation in accordance with subsection 1129(b) of the Bankruptcy Code. Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion. In addition, the pursuit of nonconsensual Confirmation of the Joint Plan may result in, among other things, increased expenses relating to professional compensation.

6.      The Chapter 11 Cases May Be Converted to Cases Under Chapter 7 of the
         Bankruptcy Code

If the Bankruptcy Court finds that it would be in the best interest of creditors and/or the debtor in a chapter 11 case, the Bankruptcy Court may convert a chapter 11 bankruptcy case to a case under chapter 7 of the Bankruptcy Code. In such event, a chapter 7 trustee would be appointed or elected to liquidate the debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code. The Debtors believe that liquidation under chapter 7 would result in significantly smaller distributions being made to creditors than those provided for in the Plan because of additional administrative expenses involved in the appointment of a chapter 7 trustee.

7.      The Debtors May Object to the Amount or Classification of a Claim

Except as otherwise provided in the Joint Plan, the Debtors reserve the right to object to the amount or classification of any Claim under the Joint Plan. Any holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement to the extent any such objection is sustained.

8.      Risk of Non-Occurrence of the Effective Date

Although the Debtors believe that the Effective Date will occur promptly after the
Confirmation Date, there can be no assurance as to such timing or as to whether the Effective
Date will, in fact, occur.  The timing and occurrence of the Effective Date will be impacted by
any appeal of or motion for reconsideration with respect to the Confirmation Order and the
possibility of an adverse determination of any such appeal or motion to the Debtors.

## SOLICITATION AND VOTING PROCEDURES

This Disclosure Statement, which is accompanied by a Ballot or Ballots to be used for
voting on the Joint Plan, is being distributed to the holders of Claims in those Classes that are
entitled to vote to accept or reject the Joint Plan. The procedures and instructions for voting and
related deadlines are set forth in the exhibits annexed to the motion to approve the Disclosure
Statement.

**The Disclosure Statement Order is incorporated herein by reference and should be
read in conjunction with this Disclosure Statement and in formulating a decision to vote to
accept or reject the Joint Plan.**

> **<u>THE DISCUSSION OF THE SOLICITATION AND VOTING PROCESS SET FORTH IN
> THIS DISCLOSURE STATEMENT IS ONLY A SUMMARY</u>**.
> PLEASE REFER TO THE DISCLOSURE STATEMENT ORDER ATTACHED HERETO FOR A
> MORE COMPREHENSIVE DESCRIPTION OF THE SOLICITATION AND VOTING PROCESS.

A.      <u>Holders of Claims Entitled to Vote on the Joint Plan</u>

Under the provisions of the Bankruptcy Code, not all holders of claims against a debtor
are entitled to vote on a chapter 11 plan. The Disclosure Statement provides a summary of the
status and voting rights of each Class (and, therefore, of each holder within such Class absent an
objection to the holder's Claim) under the Plan.

The Debtors are not soliciting votes from holders of non-voting Claims

B.      <u>Ballots Not Counted</u>

No ballot will be counted toward Confirmation if, among other things: (1) it is illegible or
contains insufficient information to permit the identification of the holder of the Claim; (2) it was
cast by an entity that is not entitled  to vote on the Joint Plan; (3) it was cast for a Claim listed in
the Debtors' respective  schedules as contingent, unliquidated, or disputed for which the
applicable Bar Date has passed and no proof of claim was timely filed; (4) it  was cast for a
Claim that is subject to an objection pending; (5) it is unsigned; or (6) it is not clearly marked to
either accept or reject the Plan or it is marked both to accept and reject the Joint Plan. **Please
refer to the Disclosure Statement Order for additional requirements with respect to voting
to accept or reject the Joint Plan.**

## X. CONFIRMATION OF THE PLAN

### A. Requirements for Confirmation of the Joint Plan

Among the requirements for Confirmation of the Joint Plan pursuant to section 1129 of the Bankruptcy Code are: (1) the Plan is accepted by all Impaired Classes of Claims or Interests, or if rejected by an Impaired Class, the Joint Plan "does not discriminate unfairly" and is "fair and equitable" as to the rejecting Impaired Class; (2) the Plan is feasible; and (3) the Joint Plan is in the "best interests" of holders of Claims and Interests.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Joint Plan satisfies all of the requirements of section 1129 of the Bankruptcy Code. The Debtor believes that: (1) the Joint Plan satisfies, or will satisfy, all of the necessary statutory requirements of chapter 11; (2) the Debtor has complied, or will have complied, with all of the necessary requirements of chapter 11; and (3) the Joint Plan has been proposed in good faith.

### B. Best Interests of Creditors

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each impaired class, that each holder of a claim or an equity interest in such impaired class either (1) has accepted the plan or (2) will receive or retain under the plan property of a value that is not less than the amount that the non-accepting holder would receive or retain if the Debtor liquidated under chapter 7.

The Joint Plan provides a basis for profitable future operations which, in the Debtors' business judgment, will generate substantial value to Creditors in relation to a forced liquidation under Chapter 7.

### C. Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan of reorganization is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor, or any successor to the debtor (unless such liquidation or reorganization is proposed in such plan of reorganization), which is the case here.

To determine whether the Joint Plan meets this feasibility requirement, the Debtors have analyzed their ability to meet their respective obligations under the Joint Plan and believe that such obligations will be met.

### D. Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, except as described in the following section, that each class of claims or equity interests impaired under a plan, accept the

plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such a class is not required.[2]

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in a dollar amount and more than one-half in a number of allowed claims in that class, counting only those claims that have actually voted to accept or to reject the plan. Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually cast their ballots in favor of acceptance.

### E.    Confirmation Without Acceptance by All Impaired Classes

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if all impaired classes have not accepted it; provided, however, the plan has been accepted by at least one impaired class. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class's rejection or deemed rejection of the plan, the plan will be confirmed, at the plan proponent's request, in a procedure commonly known as a "cramdown" so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or equity interests that is impaired under, and has not accepted, the plan.

If any Impaired Class rejects the Joint Plan, the Debtors reserve the right to seek to confirm the Joint Plan utilizing the "cramdown" provision of section 1129(b) of the Bankruptcy Code. To the extent that any Impaired Class rejects the Joint Plan or is deemed to have rejected the Plan, the Debtor will request Confirmation of the Joint Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. The Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Joint Plan to satisfy the requirements of section 1129(b) of the Bankruptcy Code.

(a)    No Unfair Discrimination

The "unfair discrimination" test applies to classes of claims or interests that are of equal priority and are receiving different treatment under a plan. The test does not require that the treatment be the same or equivalent, but that treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (e.g., classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly. A plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

(b)    Fair and Equitable Test

---

[2]   A class of claims is "impaired" within the meaning of section 1124 of the Bankruptcy Code unless the plan (a) leaves unaltered the legal, equitable and contractual rights to which the claim or equity interest entitles the holder of such claim or equity interest or (b) cures any default, reinstates the original terms of such obligation, compensates the holder for certain damages or losses, as applicable, and does not otherwise alter the legal, equitable, or contractual rights to which such claim or equity interest entitles the holder of such claim or equity interest.

The "fair and equitable" test applies to classes of different priority and status (e.g., secured versus unsecured) and includes the general requirement that no class of claims receive more than one hundred (100%) percent of the amount of the allowed claims in the class. As to the dissenting class, the test sets different standards depending upon the type of claims or equity interests in the class.

The Debtors submit that if the Debtors cram down the Joint Plan pursuant to section 1129(b) of the Bankruptcy Code, the Joint Plan is structured so that it does not "discriminate unfairly" and satisfies the "fair and equitable" requirement. With respect to the unfair discrimination requirement, all Classes under the Joint Plan are provided treatment that is substantially equivalent to the treatment that is provided to other Classes that have equal rank. The Debtors believe that the Joint Plan and the treatment of all Classes of Claims and Interests under the Joint Plan satisfy the foregoing requirements for nonconsensual Confirmation of the Joint Plan.

## XI. CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE JOINT PLAN

### A. <u>Introduction</u>

The following discussion summarizes certain United States ("U.S.") federal income tax consequences of the implementation of the Plan to the Debtors, the Reorganized Debtors, and certain holders of Claims. This summary is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), the U.S. Treasury Regulations promulgated thereunder (the "Treasury Regulations"), judicial decisions and published administrative rules, and pronouncements of the Internal Revenue Service (the "IRS"), all as in effect on the date hereof (collectively, "Applicable Tax Law"). Changes in the rules or new interpretations of the rules may have retroactive effect and could significantly affect the U.S. federal income tax consequences described below. The Debtors have not requested, and will not request, any ruling or determination from the IRS or any other taxing authority with respect to the tax consequences discussed herein, and the discussion below is not binding upon the IRS or the courts. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position than any position discussed herein.

This summary does not apply to holders of Claims that are not "United States persons" (as such phrase is defined in the Tax Code). This summary does not address foreign, state, or local tax consequences of the Plan, nor does it purport to address all aspects of U.S. federal income taxation that may be relevant to a holder in light of its individual circumstances or to a holder that may be subject to special tax rules (such as persons who are related to the Debtor within the meaning of the Tax Code, foreign taxpayers, broker-dealers, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, tax exempt organizations, pass-through entities, beneficial owners of pass-through entities, subchapter S corporations, persons who hold Claims and holders of Claims who are themselves in bankruptcy). Furthermore, this summary assumes that a holder of a Claim holds only Claims in a single Class and holds a Claim only as a "capital asset" (within the meaning of section 1221 of the Tax Code). This summary also assumes that the various debt

and other arrangements to which any of the Debtor is a party will be respected for U.S. federal income tax purposes in accordance with their form, and that the Claims constitute interests in the Debtor "solely as a creditor" for purposes of section 897 of the Tax Code. This summary does not discuss differences in tax consequences to holders of Claims that act as Backstop Parties or otherwise act or receive consideration in a capacity other than any other holder of a Claim of the same Class or Classes, and the tax consequences for such holders may differ materially from that described below.

**ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM OR INTEREST. ALL HOLDERS OF CLAIMS OR INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS AS TO THE FEDERAL, STATE, LOCAL, AND NON-U.S. INCOME, ESTATE, AND OTHER TAX CONSEQUENCES OF THE PLAN.**

### B. Certain U.S. Federal Income Tax Consequences to the Debtors and the Reorganized Debtors

#### 1. Cancellation of Debt and Reduction of Tax Attributes

In general, absent an exception, a debtor will realize and recognize cancellation of debt income ("COD Income") upon satisfaction of its outstanding indebtedness for total consideration less than the amount of such indebtedness. The amount of COD Income, in general, is the excess of (a) the adjusted issue price of the indebtedness satisfied, over (b) the sum of (i) the amount of Cash paid, (ii) the issue price of any new indebtedness of the taxpayer issued, and (iii) the fair market value of any other new consideration (including stock of the debtor) given in satisfaction of such indebtedness at the time of the exchange.

Under section 108 of the Tax Code, a debtor is not required to include COD Income in gross income if the debtor is under the jurisdiction of a court in a case under chapter 11 of the Bankruptcy Code and the discharge of debt occurs pursuant to that proceeding. Instead, as a consequence of such exclusion, a debtor must reduce its tax attributes by the amount of COD Income that it excluded from gross income pursuant to the rule discussed in the preceding sentence. In general, tax attributes will be reduced in the following order: (a) net operating loss ("NOLs") and NOL carryforwards; (b) general business credit carryovers; (c) minimum tax credit carryovers; (d) capital loss carryovers; (e) tax basis in assets; (f) passive activity loss and credit carryovers; and (g) foreign tax credit carryovers. Alternatively, a debtor with COD Income may elect first to reduce the basis of its depreciable assets pursuant to     section 108(b)(5) of the Tax Code. The reduction in tax attributes occurs only after the tax for the year of the debt discharge has been determined. Any excess COD Income over the amount of available tax attributes is not subject to U.S. federal income tax and has no other U.S. federal income tax impact.

#### 2. Limitation of NOL Carryforwards and Other Tax Attributes

Under sections 382 and 383 of the Tax Code, if an entity undergoes an "ownership change," the amount of its Pre-Change Losses that may be utilized to offset future taxable income generally is subject to an annual limitation. The rules of section 382 of the Tax Code are complicated, but as a general matter, the Debtor anticipates that the Plan will not result in an "ownership change" of the Reorganized Debtor for these purposes.

(a)    Special Bankruptcy Exceptions

Section 382(1)(5) of the Tax Code applies when so-called "qualified creditors" of a debtor corporation in chapter 11 receive, in respect of their Claims, at least fifty (50%) percent of the vote and value of the stock of the reorganized debtor (or a controlling corporation if also in chapter 11) pursuant to a confirmed chapter 11 plan (the "382(1)(5) Exception"). Under the 382(1)(5) Exception, a debtor's Pre-Change Losses are not limited on an annual basis, but, instead, NOL carryforwards will be reduced by the amount of any interest deductions claimed during the three taxable years preceding the effective date of the plan of reorganization, and during the part of the taxable year prior to and including the effective date of the plan of reorganization, in respect of all debt converted into stock in the reorganization. If the 382(1)(5) Exception applies and the Reorganized Debtors undergo an "ownership change" within two years after the Effective Date, then the Reorganized Debtors' Pre-Change Losses effectively would be eliminated in their entirety.

Where the 382(1)(5) Exception is not applicable to a corporation in bankruptcy (either because the debtor does not qualify for it or the debtor otherwise elects not to utilize the 382(1)(5) Exception), a second special rule will generally apply (the "382(1)(6) Exception"). Under the 382(1)(6) Exception, the annual limitation will be calculated by reference to the lesser of the value of the debtor corporation's new stock (with certain adjustments) immediately after the ownership change or the value of such debtor corporation's assets (determined without regard to liabilities) immediately before the ownership change. This differs from the ordinary rule that requires the fair market value of a debtor corporation that undergoes an "ownership change" to be determined before the events giving rise to the change. The 382(1)(6) Exception also differs from the 382(1)(5) Exception in that under it the debtor corporation is not required to reduce their NOL carryforwards by the amount of interest deductions claimed within the prior three-year period, and the debtor may undergo a change of ownership within two years without triggering the elimination of its Pre-Change Losses.

The Debtors have not yet determined whether or not the 382(1)(5) Exception will apply. It is possible that the Debtors will not qualify for the 382(1)(5) Exception. Alternatively, the Reorganized Debtors may decide to elect out of the 382(1)(5) Exception, particularly if it appears likely that another ownership change will occur within two years after emergence. In either case, the Debtors expect that their use of the Pre-Change Losses (if any) after the Effective Date will be subject to limitation based on the rules discussed above, but taking into account the 382(1)(6) Exception. Regardless of whether the Reorganized Debtors take advantage of the 382(1)(6) Exception or the 382(1)(5) Exception, the Reorganized Debtors' use of their Pre-Change Losses after the Effective Date may be adversely affected if an "ownership change" within the meaning of section 382 of the Tax Code were to occur after the Effective Date.

3. Alternative Minimum Tax

In general, an alternative minimum tax ("AMT") is imposed on a corporation's alternative minimum taxable income ("AMTI") at a twenty (20%) percent rate to the extent such tax exceeds the corporation's regular federal income tax for the year. AMTI is generally equal to regular taxable income with certain adjustments. For purposes of computing AMTI, certain tax deductions and other beneficial allowances are modified or eliminated. For example, under section 56(g)(4)(G) of the Tax Code, an ownership change (as discussed above) that occurs with respect to a corporation having a net unrealized built-in loss in its assets will cause, for AMT purposes, the adjusted basis of each asset of the corporation immediately after the ownership change to be equal to its proportionate share (determined on the basis of respective fair market values) of the fair market value of the assets of the corporation, as determined under section 382(h) of the Tax Code, immediately before the ownership change, the effect of which may increase the amount of AMT owed by the Reorganized Debtors.

4. Information Reporting and Back-Up Withholding

Payments in respect of Allowed Claims under the Joint Plan may be subject to applicable information reporting and backup withholding. Backup withholding of taxes will generally apply to payments in respect of an Allowed Claim under the Joint Plan if the holder of such Allowed Claim fails to provide an accurate taxpayer identification number or otherwise fails to comply with the applicable requirements of the backup withholding rules.

Backup withholding is not an additional tax. Amounts withheld under the backup withholding rules may be credited against a holder's U.S. federal income tax liability, and a holder may obtain a refund of any excess amounts withheld under the backup withholding rules by filing an appropriate claim for refund with the IRS (generally, a federal income tax return).

**THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION. ALL HOLDERS OF CLAIMS AND INTERESTS SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE JOINT PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL, OR FOREIGN TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS.**

## XII.   RECOMMENDATION

In the business judgment of the Debtors, the Joint Plan is preferable to all other available alternatives and provides for a larger distribution to the Debtors' creditors than would otherwise result in any other scenario. Accordingly, the Debtors recommend that Holders of Claims entitled to vote on the Joint Plan vote to accept the Joint Plan and support Confirmation of the Joint Plan.

Dated:  September 1, 2023

Respectfully submitted,

**KURTZMAN | STEADY, LLC**

By:/s/ Jeffrey Kurtzman_____
    Jeffrey Kurtzman, Esquire
    555 City Avenue, Suite 480
    Bala Cynwyd, PA  19004
    Telephone:  (215) 839-1222
    Email:  kurtzman@kurtzmansteady.com

-  and  -

Frank Hoegen, Esquire
HOEGEN & ASSOCIATES, PC
152 S. Franklin Street #2
Wilkes-Barre, PA 18701
Telephone: (570) 820-3332
Email: fhoegen@hoegenlaw.com

Attorneys for Debtors and Debtors-in-Possession